STATE OF NORTH CAROLINA, Plaintiff v. WENDELL WADE STRICKLAND, Defendant

No. 8910SC411

(Filed 4 January 1990)

**1. Criminal Law § 162 (NCI3d)— necessity for objection to testimony**

Defendant was precluded from asserting error in the testimony of two State's witnesses which impeached a defense witness where defendant objected only to the presence of the two witnesses in the courtroom during testimony by the defense witness but failed to object to the testimony of the State's witnesses.

**Am Jur 2d, Trial §§ 61, 62.**

**2. Criminal Law § 51.1 (NCI3d)— clinical psychologist—expert in behavior of sexual assault victims**

The trial court did not err in qualifying a witness as an expert in clinical psychology and in the specific area of behavior and treatment of sexual assault victims where the witness is an associate professor of psychology at Duke University and has been licensed as a psychologist in North Carolina for fourteen years, has published fifteen research papers, has had eleven research grants, has presented papers at professional organizations, has directed seventeen doctoral dissertations, and has supervised twenty-three major papers and honors theses on the topics of sexual trauma, sexual aggression, stress and coping, and helplessness.

**Am Jur 2d, Expert and Opinion Evidence § 197; Rape §§ 68, 68.5.**

**3. Rape and Allied Offenses § 4 (NCI3d)— rape victim—Post Traumatic Stress Disorder—admissibility of opinion testimony**

A clinical psychologist was properly permitted to testify that an alleged rape and sexual offense victim was suffering from Post Traumatic Stress Disorder and that her behavior was consistent with that of other sexual assault victims.

**Am Jur 2d, Expert and Opinion Evidence § 197; Rape §§ 68, 68.5.**

**4. Criminal Law § 50.1 (NCI3d); Rape and Allied Offenses § 4 (NCI3d) — clinical psychologist — opinion on reliability of victim's responses — long term effect of PTSD — admissibility of testimony**

A clinical psychologist's testimony that an alleged rape victim did not fake her responses to tests administered to her and did not exaggerate the symptoms of PTSD and the witness's extensive testimony on the long term effect of PTSD was admissible and relevant as expert testimony on the credibility of psychological tests and as the basis for her diagnosis of the victim.

**Am Jur 2d, Expert and Opinion Evidence § 197; Rape §§ 68, 68.5.**

**5. Criminal Law § 146.2 (NCI3d) — subject matter jurisdiction over crimes — failure to object**

Defendant's failure to make a motion to dismiss for lack of jurisdiction or improper venue waived his right to appeal the constitutionality of the statute giving a Wake County trial court subject matter jurisdiction over the charges against defendant.

**Am Jur 2d, Criminal Law §§ 339, 361, 364.**

APPEAL by defendant from a judgment entered 25 May 1988 by *Judge Anthony M. Brannon* in WAKE County Superior Court. Heard in the Court of Appeals 15 November 1989.

The State's evidence tended to show that after shopping the victim left Crabtree Valley Mall in Raleigh and went to her car. As she was opening the door, the defendant intervened, putting her in the passenger seat and taking the driver's seat himself. The victim stated that the defendant drove the car out of Raleigh, stopped on a deserted road, slapped her in the face with his hand, engaged in cunnilingus upon her and then raped her. He then drove the car to Garner where he used her credit card to take $200 from a bank machine. She testified that defendant took her to his house where she spent the night in his bedroom. Defendant's roommate testified that he saw the defendant and the victim at the house on the night in question and thought he heard the sounds of lovemaking coming from defendant's room. The next day, defendant took the victim to a place near Raleigh and let her out. Defend-

ant's roommate stated that he followed the defendant and victim on that morning, and that, when defendant got out of victim's car, victim kissed him good-bye. Victim denied kissing defendant good-bye. The victim testified that she then contacted her employer, her boyfriend and the police.

At trial, three witnesses were called to impeach the testimony of defendant's roommate. A psychologist testified at trial about Post Traumatic Stress Disorder and stated that the prosecuting witness's symptoms were consistent with sexual abuse and inconsistent with consensual sexual activity. The jury found defendant guilty of common law robbery, second degree rape, second degree sexual offense, assault on a female, and first degree kidnapping. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General William P. Hart, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

LEWIS, Judge.

Defendant brings forward on appeal three assignments of error.

## I: Testimony of impeaching witnesses

First, defendant argues that the trial court erred in admitting the testimony of three rebuttal witnesses. The State called Rickie Creech, defendant's roommate, who testified that he thought he heard "sex sounds" coming from defendant's room on the night of the alleged rape. On cross-examination, he was questioned about a statement he had made to police officers shortly after the incident. Creech had indicated to the police that he heard the victim state to the defendant, "let's make love." The State called three "impeaching" witnesses who testified about an attempt by the defendant to influence the witness Creech to exaggerate and lie to the police. These witnesses stated that Creech had backed off of some of his earlier "exaggerated" statements and that he was initially deceptive in answering questions. They also stated that Creech told them that the defendant had asked him to lie about the incident. These witnesses were called during the State's case-in-chief for the purpose of impeaching Creech's testimony through extrinsic evidence on a collateral matter.

[1] During Creech's testimony, defendant's counsel objected to the presence of two witnesses, Longmire and Parker, in the courtroom after the judge had ordered witnesses sequestered. The trial judge allowed the witnesses to be present during Creech's testimony saying those witnesses must "actually hear the precise words that [they] are called upon to contradict when they are called to the witness stand." When the challenged witnesses testified, however, defendant's counsel did not object to their testimony. These witnesses impeached Creech's testimony by showing evidence of bias and the extent to which he might have been influenced by the defendant. Defendant states in his reply brief: "No objection beyond that which was made by counsel was needed in order to bring the matter to the court's attention for a ruling." In fact, defense counsel's failure to make a timely objection at the time the State presented the challenged witnesses on direct examination precludes his right to assert this alleged error on appeal. North Carolina General Statute section 15A-1446(a) states: "[E]rror may not be asserted upon appellate review unless the error has been brought to the attention of the trial court by appropriate and timely objection or motion." The statute requires that the objection to "the alleged error" must have been "*clearly* presented . . . to the trial court" (emphasis added). In this case, defendant's counsel objected only to the presence of two of the challenged witnesses during the testimony of Creech and not specifically to the content of the challenged witnesses' proposed testimony. Defense counsel stated: "If ['Det. Mike Longmeyer' [sic] and 'Mr. Parker'] are going to be called as witnesses, I want to object and want the record to reflect that they are not in the Courtroom and were so during the testimony of [Creech]." There was no objection at trial to the testimony of Karen Lewis whose testimony the defense counsel is challenging on appeal. Therefore, defense counsel has waived his right to object to her testimony.

## II: Testimony by psychologist

[2] The defendant's second assignment of error states that the trial court erred in admitting the testimony of Dr. Susan Roth. Dr. Roth, a clinical psychologist, tested, diagnosed, and treated the victim. She testified at trial that the victim was suffering from Post Traumatic Stress Disorder (PTSD) and that the victim's behavior was consistent with the behaviors of other victims of sexual assault. Defendant states in her brief that Dr. Roth "was not qualified to offer testimony on Post-Traumatic Stress Disor-

der, or to·diagnose the [victim]." In *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985), the standard for qualifying an expert witness was stated. Citing *State v. Woods*, 286 N.C. 612, 213 S.E.2d 214, *death sentence vacated*, 428 U.S. 903 (1976), the *Young* court stated: "Where a judge finds a witness qualified as an expert, that finding will not be reversed unless there was no competent evidence to support the finding or unless the judge abused his discretion." *Id.* at 679, 325 S.E.2d at 188. Dr. Roth is an associate professor of psychology at Duke University and has been licensed as a psychologist in North Carolina for fourteen years. She has published fifteen research papers, has had eleven research grants, has presented papers at professional organizations, directed seventeen doctoral dissertations, and supervised twenty-three major papers and honors theses on the topics of sexual trauma, sexual aggression, stress and coping, and helplessness. The trial court properly exercised its discretion in qualifying Dr. Roth as an expert in clinical psychology and as an expert in the specific area of behavior and treatment of victims of sexual assault.

[3]   The defendant also contends that "[t]estimony on Post-Traumatic Stress Syndrome should not have been admitted." When the victim went to see Dr. Susan Roth after the alleged rape, Dr. Roth conducted tests, interviewed the victim and then diagnosed her as suffering from Post Traumatic Stress Disorder. At trial, Dr. Roth stated her conclusion:

> Q. Based on your testing that you gave her and based on her narrative to you of what happened to her that night, did you diagnose her as suffering from any recognized trauma?
>
> A. Yes.
>
> Q. What was that diagnosis?
>
> A. Post-traumatic stress disorder.

The American Psychiatric Association recognizes the diagnosis for PTSD in its *Diagnostic and Statistical Manual of Mental Disorders* 236 (3rd ed. 1980). Some jurisdictions have held that expert testimony on post traumatic stress disorder in rape cases is not admissible. *See State v. Saldana*, 324 N.W.2d 227 (Minn. 1982); *People v. Bledsoe*, 203 Cal. Rptr. 450, 36 Cal.3d 236, 681 P.2d 291 (1984). Most jurisdictions allow such testimony on PTSD, or on rape trauma syndrome, or expert testimony regarding reactions or behavior consistent with other victims of sexual assault.

*See State v. Huey*, 145 Ariz. 59, 699 P.2d 1290 (1985); *Poyner v. State*, 288 Ark. 402, 705 S.W.2d 882 (1986); *Powell v. State*, 527 A.2d 276 (Del. 1987); *Kruse v. State*, 483 So.2d 1383 (Fla. 1986), *rev. dismissed*, 507 So.2d 588 (1987); *Allison v. State*, 256 Ga. 851, 353 S.E.2d 805 (1987); *State v. Kim*, 64 Haw. 598, 645 P.2d 1330 (1982); *Simmons v. State*, 504 N.E.2d 575 (Ind. 1987); *State v. McQuillen*, 236 Kan. 161, 689 P.2d 822 (1984); *State v. Allewalt*, 308 Md. 89, 517 A.2d 741 (1986); *State v. Liddell*, 211 Mont. 180, 685 P.2d 918 (1984); *People v. Reid*, 123 Misc. 2d 1084, 475 N.Y.S.2d 741 (1984); *State v. Whitman*, 16 Ohio App. 3d 246, 475 N.E.2d 486 (1984); *State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983); *Commonwealth v. Gallagher*, 353 Pa.Super. 426, 510 A.2d 735 (1986); *Brown v. State*, 692 S.W.2d 146 (Tex. 1985); *U.S. v. Winters*, 729 F.2d 602 (9th Cir. 1984). Legal authors have also been divided in their approach to the admissibility of testimony on rape trauma syndrome. For some advocating admission of such testimony, see Massaro, *Experts, Psychology, Credibility and Rape: The Rape Trauma Syndrome Issue and Its Implications for Expert Psychological Testimony*, 69 Minn. L. Rev. 395 (1985). For writers who have criticized the admissibility of this testimony, see Note, *Checking the Allure of Increased Conviction Rates: The Admissibility of Expert Testimony on Rape Trauma Syndrome in Criminal Proceedings*, 70 Va. L. Rev. 1657 (1984).

As recently as 1986, North Carolina's appellate courts had not directly addressed the question of the admissibility of testimony on PTSD. In *State v. Stafford*, the majority in this North Carolina Supreme Court decision addressed only the question of whether or not this testimony on rape trauma syndrome was presented "for purposes of medical diagnosis or treatment" or was it presented "in preparation for going to court." 317 N.C. 568, 346 S.E.2d 463 (1986). The majority stated: "We do not deem it necessary to reach on this record the question whether in a proper case testimony about rape trauma syndrome will be admissible in the courts of this state." *Id.* at 575, 346 S.E.2d at 468. Justices Martin and Mitchell dissented in that opinion, indicating that statements made by the victim's physician "are within the scope of admissible hearsay permitted by N.C.R.Evid. 803(4)" which permits statements made "for purposes of medical diagnosis or treatment." *Id.* at 578, 346 S.E.2d at 469. The two dissenting justices did not question whether statements on rape trauma syndrome should be admissible in North Carolina courts but, by arguing for the admissibility of

the statements made in this case, indicated that they would allow such testimony if it met the appropriate evidence requirements. In that same case when it was heard in the Court of Appeals, Judge Martin did address this question directly in his dissenting opinion and stated:

> I would hold such expert testimony admissible. There is recognized scientific authority for the medical conclusion that there exists a complex and unique number of physical and emotional symptoms exhibited by victims of rape, which are similar, but not identical, to other post-traumatic stress disorder symptoms. Massaro, *supra* (reviewing scientific studies). An understanding of those symptoms, the unique reactions of victims of rape, is not within the common knowledge or experience of most persons called upon to serve as jurors. Therefore, expert testimony as to the symptoms of the syndrome and its existence, is admissible to assist jurors in understanding the evidence and in drawing appropriate conclusions therefrom. G.S. 8C-1, Rule 702; *State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978) ("battered child syndrome," expert testimony admissible).

77 N.C. App. 13, 24, 334 S.E.2d 799, 803 (1985), *aff'd*, 317 N.C. 568, 346 S.E.2d 463 (1986).

In 1987, the North Carolina Supreme Court in *State v. Clemmons*, 319 N.C. 192, 353 S.E.2d 209 (1987), addressed the admissibility of evidence of the defendant's prior alleged sexual misconduct. During the trial, "an expert medical doctor specializing in the field of psychiatry" testified that he had diagnosed the victim of this alleged rape as having "post traumatic stress disorder" and he described her behavior which prompted his diagnosis. *Id.* at 196, 353 S.E.2d at 211. In concluding that the challenged testimony on prior sexual misconduct was admissible, the court stated: "Considering . . . particularly the medical evidence of the victim's severe post-traumatic stress disorder for a lengthy period immediately following the incident, we conclude that there is no reasonable possibility that the jury would not have convicted defendant. . . ." *Id.* at 199, 353 S.E.2d at 213. *Clemmons* indicates that evidence on PTSD would be admissible in North Carolina courts.

[4]   The defendant also objected to the testimony by the psychologist that the victim "did not fake her responses to the tests administered to her by [the psychologist]," that the victim did not "exaggerate

the symptoms of PTSD," and also to the psychologist's "extensive testimony . . . on the long term effects of PTSD." Such testimony is admissible and relevant as an expert's opinion on the credibility of psychological tests and as the expert's basis for making her diagnosis. *See State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359 (1987); *State v. Helms*, 93 N.C. App. 394, 378 S.E.2d 237 (1989); *State v. Bailey*, 89 N.C. App. 212, 365 S.E.2d 651 (1988); *State v. Teeter*, 85 N.C. App. 624, 355 S.E.2d 804 (1987).

[5] Finally, defendant concedes that, "as a matter of statutory law, Wake County trial court had [subject matter] jurisdiction" but that "this statute violates defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution." Defendant never made a motion to dismiss for lack of jurisdiction or improper venue and has therefore waived his right to appeal this assignment of error. N.C.G.S. section 15A-135.

No error.

Judges JOHNSON and COZORT concur.