861 P.2d 219

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ralph ALBERICO, Defendant–Appellant.**

**No. 12368.**

Court of Appeals of New Mexico.

Sept. 26, 1991.

Rehearing Denied Dec. 6, 1991.

Tom Udall, Atty. Gen., Max Shepherd, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Winston Roberts–Hohl, Santa Fe, for defendant-appellant.

## OPINION

HARTZ, Judge.

Once again we confront the issue of the admissibility of expert testimony relating to rape trauma syndrome (RTS). In *State v. Bowman*, 104 N.M. 19, 715 P.2d 467 (Ct.App.1986), we assumed, but did not decide, that expert testimony on RTS is admissible. We affirmed the trial judge's exercise of his discretion in refusing to permit the testimony in the circumstances of that case. In *State v. Barraza*, 110 N.M. 45, 791 P.2d 799 (Ct.App.1990), we affirmed a conviction in which testimony regarding RTS was admitted, but we did not address various challenges to the testimony raised on appeal because they had not been preserved at trial. In this case we hold that the expert testimony was improperly admitted. Because we reverse defendant's conviction on this ground, we need not address the other issues raised by defendant on appeal, although we note our concern as to the relevance of the prior statement by defendant's girlfriend.

## I. FACTS

Defendant was convicted of two counts of criminal sexual penetration (CSP) and one count of kidnapping. The alleged victim was fifteen years old at the time of the incident. Defendant did not dispute that he had intercourse with her. The issue at trial was whether the intercourse was consensual.

The complainant's testimony was as follows: She knew defendant prior to the incident. On the night in question she entered his car after he invited her to come in out of the cold. Defendant told her he would drive her home, but instead drove out of Santa Fe, saying that they were going for a ride. Somewhere in the Tesuque area defendant stopped the car and forced her to touch his penis with her mouth. He then forcibly lowered her pants and raped her. She was able to escape after the rape by jumping out of the car when he slowed the vehicle upon re-entering Santa Fe. She immediately went to a friend's house and told the friend what had happened. The police and the rape crisis center were contacted and she went to the hospital for an examination.

The complainant's version of the events occurring after she returned to Santa Fe was corroborated by her friend, the examining physician at the hospital, an investigating officer from the Santa Fe police department, and two officers from the Santa Fe County sheriff's office. The complainant, her mother, and a psychologist, Dr. Barbara Lenssen, who saw the complainant several times after the incident, testified concerning the deleterious effects of the incident on the complainant's psychological health. She experienced behavioral changes, including withdrawal from her normal activities, inability to sleep, increased anger, loss of weight, and excessive nervousness.

Defendant testified that the intercourse was consensual. He stated that after he had intercourse with the complainant, she asked him for cocaine or money and he

gave her $25. The defense theory, as developed in the closing argument, was that the complainant fabricated the rape story to cover up for the fact that she had left her younger brother alone while she was out late at night with defendant. The defense attributed her behavior after the incident to feelings of guilt arising from the consensual intercourse and to her involvement with alcohol and drugs.

■ The evidence that we find to have been inadmissible was opinion testimony by Dr. Lenssen. Her opinions were based on two sessions with the complainant (the first of which was approximately five weeks after the incident) and an interview with the complainant's mother. Dr. Lenssen had substantial experience and training with respect to rape and sexual abuse; her expertise is not challenged on appeal. The gist of defendant's objection at trial to Dr. Lenssen's testimony was that she should not be permitted to give an opinion regarding what happened on the night in question because there was not a sufficient scientific showing of the reliability of such a determination. Defense counsel cited *State v. Rimmasch*, 775 P.2d 388 (Utah 1989), in which the Utah Supreme Court held that error had been committed in admitting expert testimony that, based on a psychological profile and the experts' subjective impressions gained through interviews, the alleged victim had been sexually abused.[1]

On voir dire outside the presence of the jury Dr. Lenssen testified extensively about post-traumatic stress syndrome (PTSS) and its subcategory RTS. For our purposes it is not necessary to describe these syndromes in detail. Dr. Lenssen noted that post-traumatic stress disorder (PTSD) is a diagnosis for a psychological condition that may result when an individual experiences an event that is outside the range of usual human experience and that would be markedly distressing to anyone. She pointed out that PTSD is a diagnosis accepted by the national organizations for both psychiatrists and psychologists. She testified that among the experiences that can cause PTSD is rape, and PTSS caused by rape is described as RTS. She stated that victims of rape show many symptoms of PTSD, including flashbacks, memory loss, diminished interest in activities (such as dropping out of school), suicidal ideation, inability to fall asleep, and irritability. She stated that RTS is accepted as a diagnosis by the community of psychiatrists and psychologists.

■ In her testimony before the jury Dr. Lenssen did not use the term "rape trauma syndrome." She testified that she interviewed the complainant's mother and also interviewed the complainant on two occasions. In addition, two psychological tests—the Rorschach Ink Blot Test and the Minnesota Multiphasic Personality Inventory—were administered to the complainant. Dr. Lenssen described how her scoring of the Rorschach test was objective, independent of the examiner. She stated that the MMPI scales are established scientifically and an examiner can determine if the sub-

---

**1.** Although the trial judge did not rule against defendant on this basis, he expressed the view that the objection was untimely under SCRA 1986, 5–601. That rule requires motions to be made prior to trial, unless the court waives the time requirement upon a showing of good cause. *See State v. Urban*, 108 N.M. 744, 779 P.2d 121 (Ct.App.1989). We do not, however, read the rule as requiring that every evidentiary objection by defendant must be raised before trial, although it is certainly better practice to raise complicated issues, such as this one, prior to trial, so that full consideration can be given to the matter by the court without inconvenience to the jury. We point out that when the district court decides to hear such a matter despite its not being raised until trial has begun, the trial court has at least three alternatives: (1) interrupt the trial to conduct a hearing on the matter (perhaps even after a continuance to permit the parties to prepare for the hearing), (2) declare a mistrial so that the jury need not be inconvenienced while the parties prepare for a hearing and the court conducts a hearing and reviews the matter (although this approach risks a later determination that the declaration of mistrial, particularly if made over objection by defendant, was unnecessary and therefore later retrial is barred by double jeopardy principles, *see Callaway v. State*, 109 N.M. 416, 785 P.2d 1035 (1990)), or (3) allow the trial to proceed to verdict and, in the event of a conviction, then conduct a hearing to determine whether the evidence was inadmissible and a new trial therefore required.

ject is telling the truth in responding to the questions. She explained how she checks the validity of the complainant's account of the alleged assault by looking at such features as its coherence and logical order, as well as by noting her mental state when telling the story. Dr. Lenssen then concluded by stating her diagnosis—"which is from a manual used by all psychologists and psychiatrists"—of PTSD. She said that this diagnosis is consistent with a person who has suffered sexual abuse or rape and added that this is the most common diagnosis of victims of sexual assault. On cross-examination Dr. Lenssen was asked if there was any possibility that the complainant was lying. She stated that she could not make such a determination, although the information she had was consistent with one who has suffered sexual assault. Also in response to cross-examination, Dr. Lenssen stated that there did not appear to be any factors other than the assault that could have contributed to the complainant's symptoms. We note that we do not predicate reversal on answers that were invited by defense counsel's cross-examination.

## II. ADMISSIBILITY OF TESTIMONY REGARDING RAPE TRAUMA SYNDROME

To reach our conclusion in this case we must consider (1) the purpose for which Dr. Lenssen's testimony was offered, (2) general limitations on the admissibility of expert testimony, and (3) the application of those limitations to Dr. Lenssen's testimony. We emphasize that our holding regarding the admissibility of Dr. Lenssen's testimony should not be taken as a reflection on her expertise or integrity.

### A. Purpose of the Expert Testimony.

There are a variety of purposes that can be served by a psychologist's testimony in a case involving alleged sexual assault. To clarify what is at issue here, we first discuss what is not at issue by noting various purposes of psychological testimony that would generally be admissible in litigation involving alleged rape.

One purpose would be to establish that the alleged victim was suffering from a psychological ailment. That may be relevant in prosecutions under some criminal codes. For example, in New Mexico criminal sexual penetration in the third degree becomes criminal sexual penetration in the second degree if the crime results in personal injury to the victim. *See* NMSA 1978, § 30–9–11(B), (C). We have held that "personal injury" encompasses mental anguish and have upheld the admission of expert testimony of mental anguish to establish that element of the crime. *State v. Barraza,* 110 N.M. 45, 791 P.2d 799 (Ct. App.1990); *cf. Alphonso v. Charity Hosp. of La. at New Orleans,* 413 So.2d 982 (La. Ct.App.1982) (RTS testimony admitted to prove damages). We note that in this case the prosecutor specifically stated that she was not offering Dr. Lenssen's testimony to prove mental anguish. Moreover, even if a psychologist's testimony is admissible to establish mental anguish, it does not follow that the trial court must permit the expert witness to include in the testimony terms such as "rape trauma syndrome" or "post-traumatic stress disorder."

A second possible purpose of psychological testimony is to rehabilitate the credibility of the alleged victim when that credibility may be called into question because of behavior by the alleged victim that could seem inconsistent with having been sexually assaulted. Psychiatrists, psychologists, social workers, and others with experience in the field have repeatedly observed that victims of rape often act in ways contrary to what lay persons would expect, such as by failing to report the assault promptly or by continuing an association with the assailant. For an expert to testify that such conduct is consistent with rape is to educate the jury to a phenomenon well-recognized by experts but beyond the experience of most lay persons. Such testimony properly informs the jury that it should not draw inappropriate inferences from the bizarre conduct of the alleged victim. There appears to be near unanimity that qualified experts may testify to these observations. *See, e.g., United States v. Winters,* 729

F.2d 602 (9th Cir.1984) (testimony on PTSD in prosecution for kidnapping and violation of Mann Act); *People v. Bledsoe*, 36 Cal.3d 236, 681 P.2d 291, 203 Cal.Rptr. 450 (1984) (en banc); *People v. Hampton*, 746 P.2d 947 (Colo.1987) (en banc); *Simmons v. State*, 504 N.E.2d 575 (Ind.1987); *Commonwealth v. Mamay*, 407 Mass. 412, 553 N.E.2d 945 (1990); *Terrio v. McDonough*, 16 Mass.App.Ct. 163, 450 N.E.2d 190 (1983) (civil case); *State v. Staples*, 120 N.H. 278, 415 A.2d 320 (1980); *White v. Violent Crimes Comp. Bd.*, 76 N.J. 368, 388 A.2d 206 (1978) (statute of limitations tolled during incapacity caused by RTS); *People v. Taylor*, 75 N.Y.2d 277, 552 N.E.2d 131, 552 N.Y.S.2d 883 (1990); *State v. Robinson*, 146 Wis.2d 315, 431 N.W.2d 165 (1988); *Scadden v. State*, 732 P.2d 1036 (Wyo. 1987); *cf. State v. Newman*, 109 N.M. 263, 784 P.2d 1006 (Ct.App.1989) (testimony regarding reaction of victim of child abuse); *State v. Moran*, 151 Ariz. 378, 728 P.2d 248 (1986) (victim of child sexual abuse); *State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983) (same). *But see Commonwealth v. Gallagher*, 519 Pa. 291, 547 A.2d 355 (1988). Of course, to say that such evidence may be relevant to explain behavior that would not otherwise be understood by a jury is not to say that in such circumstances everything relating to RTS should be admitted. It may be unnecessary to describe the syndrome fully, use the terms "rape trauma syndrome" or "post-traumatic stress disorder," or express a diagnosis that the alleged victim suffered from RTS or PTSD. After all, the only point to be made is that those experienced in the field recognize that rape victims fail to report the offense for a long time, appear to cooperate with the perpetrator, etc.

A third possible purpose of psychological testimony is to support the direct inference that the alleged victim was sexually assaulted. Testimony for this purpose could take two forms. It could be limited to a description of the alleged victim's psychological condition—for example, depression, withdrawal, paranoia. Or it could also encompass opinion testimony relating to the cause of the condition—for example, an opinion that the alleged victim suffers from

RTS or PTSD. We begin by discussing the first type of testimony.

Even absent expert testimony concerning the cause of the alleged victim's psychological condition, the prosecutor could offer evidence of that condition to convince the jury that she was indeed raped and is not making a false accusation. Such testimony when offered for this purpose is often analogized to testimony of physical injuries. When a woman suffers from severe cuts and bruises, her allegation of assault is more likely to be believed. Similarly, a jury that hears testimony of severe psychological disturbances that were not present before the incident may infer that these disturbances make it more likely that the intercourse was non-consensual. Although the inference may be incorrect—either in general or in the specific case—courts permit the jury to utilize its collective understanding of human nature and draw the inference. Apparently no court, not even those most hostile to expert testimony on RTS, disputes that the jury in a sexual assault case should be entitled to hear testimony that after the incident the alleged victim began to suffer from sleeplessness, loss of appetite, fear of men, etc. *See People v. Bledsoe*, 36 Cal.3d 236, 681 P.2d 291, 203 Cal.Rptr. 450 (1984) (en banc); *People v. Pullins*, 145 Mich.App. 414, 378 N.W.2d 502 (1985); *Commonwealth v. Pickford*, 370 Pa.Super. 444, 536 A.2d 1348 (1987); *State v. Black*, 109 Wash.2d 336, 745 P.2d 12 (1987) (en banc).

Our discussion has now led to the point at issue in this case: Should we permit expert testimony regarding the cause of the complainant's mental condition? A number of courts have addressed the issue. Yet, there is undoubtedly a split of authority. *See generally* Annotation, *Admissibility, at Criminal Prosecution, of Expert Testimony on Rape Trauma Syndrome*, 42 A.L.R.4th 879 (1985).

Several courts, for a variety of reasons, have disallowed expert testimony on the cause of complainant's mental condition. *E.g., People v. Bledsoe*, 36 Cal.3d 236, 681 P.2d 291, 203 Cal.Rptr. 450 (1984) (en banc);

*State v. Saldana,* 324 N.W.2d 227 (Minn. 1982); *State v. Taylor,* 663 S.W.2d 235 (Mo.1984) (en banc); *People v. Taylor,* 75 N.Y.2d 277, 552 N.E.2d 131, 552 N.Y.S.2d 883 (1990); *Commonwealth v. Zamarripa,* 379 Pa.Super. 208, 549 A.2d 980 (1988); *State v. Black; see* Note, *Checking the Allure of Increased Conviction Rates: The Admissibility of Expert Testimony on Rape Trauma Syndrome in Criminal Proceedings,* 70 Va.L.Rev. 1657 (1984) (opposing such testimony); *cf. State v. Moran,* 151 Ariz. 378, 728 P.2d 248 (1986) (disallowing similar testimony in child sexual abuse case but not overruling *State v. Huey,* 145 Ariz. 59, 699 P.2d 1290 (1985), which allowed RTS testimony on issue of consent); *People v. Hampton,* 746 P.2d 947 (Colo. 1987) (en banc) (improper final argument); *State v. Batangan,* 71 Haw. 552, 799 P.2d 48 (1990) (child sexual abuse); *People v. Beckley,* 434 Mich. 691, 456 N.W.2d 391 (1990) (child sexual abuse); *State v. Rimmasch,* 775 P.2d 388 (Utah 1989) (child sexual abuse); *State v. McCoy,* 179 W.Va. 223, 366 S.E.2d 731 (1988) (not allowing expert testimony to prove that rape occurred but suggesting that it is admissible when consent is the defense).

A somewhat larger number of courts, however, have permitted such testimony. *E.g., People v. Douglas,* 183 Ill.App.3d 241, 131 Ill.Dec. 779, 538 N.E.2d 1335, *cert. denied,* 127 Ill.2d 625, 136 Ill.Dec. 594, 545 N.E.2d 118 (1989); *State v. Gettier,* 438 N.W.2d 1 (Iowa 1989) (testimony regarding post-traumatic stress disorder admitted to show victim had been traumatized). *State v. Marks,* 231 Kan. 645, 647 P.2d 1292 (1982); *State v. Allewalt,* 308 Md. 89, 517 A.2d 741 (1986); *State v. Liddell,* 211 Mont. 180, 685 P.2d 918 (1984); *State v. Strickland,* 96 N.C.App. 642, 387 S.E.2d 62 (1990); *State v. Whitman,* 16 Ohio App.3d 246, 475 N.E.2d 486 (1984); *Brown v. State,* 692 S.W.2d 146 (Tex.Crim.App.1985); *see* Massaro, *Experts, Psychology, Credibility, and Rape: The Rape Trauma Syndrome Issue and Its Implications for Expert Psychological Testimony,* 69 Minn. L.Rev. 395 (1985) [hereinafter Massaro] (arguing in favor of such testimony); *Henson v. State,* 535 N.E.2d 1189 (Ind.1989) (defendant's expert testified that alleged victim's conduct was inconsistent with rape); *cf. Kruse v. State,* 483 So.2d 1383 (Fla.Dist.Ct. App.1986) (en banc) (child sexual abuse).

■ We believe that generally recognized principles governing the admissibility of expert testimony compel us to join those jurisdictions barring testimony concerning PTSS or RTS when the testimony suggests that the witness possesses special skills in determining from a psychological diagnosis that an alleged victim was in fact sexually assaulted. Before discussing those evidentiary principles, we note that our holding is based on our understanding of the present state of pertinent scientific research, as indicated by the record and briefs in this case and the literature we have reviewed. Future scientific research or current research that has not been brought to our attention could cause us to modify our holding.

**B. Admissibility of Expert Testimony.**

**1. In general.**

SCRA 1986, 11–702, which is identical to Federal Rule of Evidence 702, states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

We focus on the words "will assist the trier of fact." Our concern is whether a jury will be helped rather than misled or confused by expert testimony that the alleged victim's psychological condition indicates that she was assaulted.

■ At first blush it may seem illogical to permit a jury to draw inferences from certain facts while forbidding an expert to testify to the inference. Surely the expert is more qualified than a jury to analyze the facts and make appropriate conclusions. The problem is that most lay people, including the jury, are likely to feel the same way—that the expert is better qualified to draw the inference—and therefore defer to

the expert. The law should guard against such deference unless there is a substantial basis for it. Otherwise, the expert's testimony is likely to be given undue weight. *See People v. Bledsoe*, 36 Cal.3d at 251, 681 P.2d at 301, 203 Cal.Rptr. at 460 (unfair prejudice created by aura of special reliability and trustworthiness); *State v. Batangan*, 799 P.2d at 51; *State v. Saldana*, 324 N.W.2d at 230; Myers, Bays, Becker, Berliner, Corwin & Saywitz, *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb. L.Rev. 1, 20–21 (1989). In that event, the expert opinion testimony misleads or confuses the jury; it does not "assist the trier of fact."

The pivotal question therefore is "When is an expert's opinion entitled to the deference that the fact-finder is likely to give it?" With respect to scientific evidence concerning what happened in the past, the authorities have expressed a variety of views. We have held in that context that expert testimony will not assist the trier of fact unless the area of expertise has received "general acceptance in the particular field to which it belongs." *State v. Gallegos*, 104 N.M. 247, 253, 719 P.2d 1268, 1274 (Ct.App.1986) (testimony regarding battered wife syndrome is admissible). This requirement was first enunciated in *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923).

To be sure, many courts and commentators have criticized the *Frye* test as too restrictive because it excludes reliable scientific evidence. *See, e.g., McCormick on Evidence* § 203, at 606–08 (E. Cleary 3d ed. 1984); Giannelli, *The Admissibility of Novel Scientific Evidence: Frye v. United States, a Half–Century Later*, 80 Colum.L.Rev. 1197 (1980) [hereinafter Giannelli]; Romero, *The Admissibility of Scientific Evidence Under the New Mexico and Federal Rules of Evidence*, 6 N.M.L.Rev. 187 (1976); F. Rossi, *Modern Evidence and the Expert Witness* 12 Litigation 18, 20–21 (1985). *See also* Black, *A Unified Theory of Scientific Evidence*, 56 Fordham L.Rev. 595 (1988). Perhaps Rule 11–702 does not mandate full compliance with the *Frye* test in its traditional form.

Yet even if the test requires some or all of the modifications suggested by its critics, we share the underlying concerns to which it responds. The central concern addressed by the *Frye* test is that the method employed by the expert be scientifically valid—that it can accurately determine what it is supposed to determine. *See* Giannelli, *supra*, at 1200–01 & n. 20. If the method is not valid, testimony relating the conclusions reached by the method can hardly "assist the trier of fact." Such testimony can only mislead the fact-finder.

The problem for the courts is how to determine when a method is valid. The answer provided by *Frye* is that courts should look to whether the method has received "general acceptance in the particular field." One may ask, however, why the *Frye* standard should be required, especially in light of such difficulties as determining what the "particular field" is and what constitutes "general acceptance." *See generally* Giannelli, *supra*, at 1208–31. After all, the expert witness asserts, at least implicitly, that the method used to reach her conclusion is valid. Why should that not suffice? Why should not the testimony be admitted on the strength of the witness's assertions, leaving to the jury the weight to be accorded it?

In our view such an expansive approach to admissibility would put too great a strain on the capacities of the judicial system. Lawyers skilled in cross-examination may expose defects and juries may refuse to credit purported expertise, but that is hardly a foregone conclusion. Courtrooms are not well-designed to evaluate the validity of an ostensible scientific method. Indeed, the shortcomings of jury trials for this purpose are the source of the observation that jurors are likely to give undue weight to expert testimony of questionable value. Moreover, the limited resources available for trials should not be diverted to a full-scale inquiry of the validity of every "scientific" method for which a party finds an expert advocate. *See* SCRA 1986, 11–403 (relevant evidence may be excluded by the danger of confusion of the issues, undue delay, and waste of time). There

must be some threshold of independent support for the validity of the witness's methods before testimony based on the methods is admissible.

## 2. Expert Opinion Regarding Rape.

For the purposes of this case, we need be no more precise regarding the manner of establishing the validity of an expert's method. We need not decide when validation should be considered "scientific," whether there should be some form of expert consensus on the validation (as suggested by the *Frye* test), or what the burden of persuasion should be on the proponent of the expert testimony. *See generally* Giannelli, *supra*, at 1245–50 (in criminal case government should have burden of proving validity of novel scientific technique beyond a reasonable doubt). Here we have no evidence of any independent validation of the contention that mental health professionals can resolve through testing and interviews whether a person has been sexually assaulted.

We recognize that RTS has gained wide recognition since the syndrome was first described in 1974 in A. Burgess & L. Holstrom, *Rape Trauma Syndrome*, 131:9 *Am.J. Psychiatry* 981 (Sept. 1974). Study of the psychological impact of rape on the victim apparently has enabled mental health professionals to better assist such victims in recovery. The issue before us, however, is not the therapeutic advances arising from recognition of RTS.

■ The question here is whether a diagnosis of PTSD or RTS is a valid means of determining whether a rape occurred—that is, whether an alleged victim was raped or, on the contrary, suffers the identified psychological problems because of other causes, which may include factors predating the incident as well as the fact of having made a false accusation. Dr. Lenssen did not testify to scientific authority supporting the use of such a diagnosis for that purpose. The briefs of the parties refer us to no authority validating the use of a diagnosis of RTS or PTSD to resolve whether an alleged victim was raped. We have found no such authority cited in the

reported judicial decisions on the subject. Nor have we independently found any such authority. On the contrary, the observations of the California Supreme Court appear to still hold. We quote from that opinion at length:

Unlike fingerprints, blood tests, lie detector tests, voiceprints or the battered child syndrome, rape trauma syndrome was not devised to determine the "truth" or "accuracy" of a particular past event—i.e., whether, in fact, a rape in the legal sense occurred—but rather was developed by professional rape counselors as a therapeutic tool, to help identify, predict and treat emotional problems experienced by the counselors' clients or patients. As the professional literature makes clear—and as the expert testimony in this case also reveals—because in the past women who have brought charges of rape have traditionally had their credibility or motives questioned by the police and others, rape counselors are taught to make a conscious effort to avoid judging the credibility of their clients. As one expert in the field recently wrote: "When a woman seeks services from a psychologist, she wants and deserves help for her problems, not judgment. *Judgment is appropriate for courtrooms, not for psychologists' offices....* [¶] When a psychologist becomes judgmental, he/she has become entrapped in a major pitfall. The victim is likely to view her disclosure behavior as having been punished, to discontinue treatment and to become reluctant to seek services in the future. The obvious way to avoid this pitfall is to remember that your role is to provide services to your client, not to make a judgment about whether a 'real' rape occurred or about the victim's culpability." (Italics added.) (Kilpatrick, *Rape Victims: Detection, Assessment and Treatment* (Summer 1983) Clinical Psychologist 92, 94.)

Thus, as a rule, rape counselors do not probe inconsistencies in their clients' descriptions of the facts of the incident, nor do they conduct independent investiga-

tions to determine whether other evidence corroborates or contradicts their clients' renditions. Because their function is to help their clients deal with the trauma they are experiencing, the historical accuracy of the clients' descriptions of the details of the traumatizing events is not vital in their task. To our knowledge, all of the studies that have been conducted in this field to date have analyzed data that have been gathered through this counseling process and, as far as we are aware, none of the studies has attempted independently to verify the "truth" of the clients' recollections or to determine the legal implication of the clients' factual accounts.

Because it was developed for an entirely different purpose than, for example, the battered child syndrome, rape trauma syndrome represents a distinctly different concept than the battered child diagnosis described in [People v.] Jackson [, 18 Cal.App.3d 504, 95 Cal.Rptr. 919 (1971)]. It does not consist of a relatively narrow set of criteria or symptoms whose presence demonstrates that the client or patient has been raped; rather, as the counselor in this case testified, it is an "umbrella" concept, reflecting the broad range of emotional trauma experienced by clients of rape counselors. Although there are patterns that have been observed, the ongoing studies reveal that a host of variables contribute to the effect of rape on its victims; as one recent study concluded: "[c]learly, the concept of a typical rape victim has no place within the context of post rape adjustment." (McCahill et al., The Aftermath of Rape, [1979] p. 75.)

Given the history, purpose and nature of the rape trauma syndrome concept, we conclude that expert testimony that a complaining witness suffers from rape trauma syndrome is not admissible to prove that the witness was raped. We emphasize that our conclusion in this regard is not intended to suggest that rape trauma syndrome is not generally recognized or used in the general scientific community from which it arose, but only that it is not relied on in that community

for the purpose for which the prosecution sought to use it in this case, namely, to prove that a rape in fact occurred. Because the literature does not even purport to claim that the syndrome is a scientifically reliable means of proving that a rape occurred, we conclude that it may not properly be used for that purpose in a criminal trial. [Footnotes omitted.]

*People v. Bledsoe,* 36 Cal.3d at 250–51, 681 P.2d at 300–01, 203 Cal.Rptr. at 459–60 (emphasis in original). We agree with the conclusion in *Bledsoe* and hold that it is impermissible to admit expert opinion testimony that "diagnoses" the cause of a psychological condition for the purpose of demonstrating that a rape occurred.

### C. Admissibility of Dr. Lenssen's Testimony.

■ Dr. Lenssen concluded that the complainant had PTSD, the diagnosis was consistent with her having suffered sexual abuse or rape, and PTSD is the most common diagnosis of victims of sexual assault. She did not testify that the complainant suffered from RTS. Nor did she express an opinion that complainant was raped. Nevertheless, Dr. Lenssen's conclusions were inadmissible. The purpose of her testimony was to inform the jury that it could infer from the diagnosis that the complainant had suffered a severe trauma—rape.

The prosecutor stated that Dr. Lenssen "will describe the damage to the victim to tell us whether a crime has been committed." Of course, in one sense any evidence proffered by the state in a prosecution is for the purpose of showing that a crime was committed. For example, when the prosecutor impeaches the credibility of a defense witness through proof of a prior felony conviction, the purpose is to cause the jury to disbelieve that witness and thereby strengthen the credibility of state witnesses, from whose testimony the jury is to infer that the crime was committed. What the prosecutor undoubtedly meant here, however, was that her purpose was that the jury infer from Dr. Lenssen's diagnosis that a sexual assault had occurred.

As noted by the dissent, defense counsel's cross-examination of Dr. Lenssen reinforced this inference; but even absent that cross-examination, Dr. Lenssen's testimony could serve no other plausible purpose. The prosecutor explicitly stated that she was not seeking to prove mental anguish to satisfy the "personal injury" element of the offense. Nor was she attempting to rehabilitate the complainant by showing that her conduct was consistent with there having been a rape; the complainant made the accusation promptly after the incident.

The prosecutor clearly intended the testimony to be viewed as follows: (1) Dr. Lenssen diagnosed complainant as having PTSD; (2) inherent in that diagnosis is the conclusion that complainant had suffered a severe trauma; (3) one such trauma is rape; (4) in the absence of evidence of other such trauma, one should conclude that complainant was raped. Essential to this train of reasoning is the premise that through testing and interviews a psychologist can make a diagnosis that can resolve whether a woman has been raped. Dr. Lenssen did not utter the final conclusion from the suggested train of reasoning—the conclusion that complainant was raped. It was left to the jury to determine whether complainant had suffered an equivalent trauma. But failure to state the ultimate conclusion does not avoid the critical flaw in the chain of reasoning—the premise that there is a method available to psychologists that can distinguish between the alternative versions of the incident in this case. *See State v. McCoy*, 366 S.E.2d at 734 (admissibility of expert testimony does not necessarily turn on whether expert uses

the term RTS); *People v. Bledsoe*, 36 Cal.3d at 301 n. 14, 203 Cal.Rptr. at 460 n. 14, 681 P.2d at 301 n. 14 (expert testimony inadmissible even though witness never expressed conclusion that rape occurred). That premise has not been properly validated. Rule 11–702 therefore required exclusion of this line of testimony.[2]

The dissent does not persuade us otherwise. Judge Bivins apparently believes that objections to testimony that a complainant displayed RTS can be circumvented by limiting the testimony to just an assertion that the complainant suffered from PTSD. Yet the purpose of the PTSD "diagnosis" testimony in this case was to show that the complainant had suffered a severe trauma—a trauma that is outside the range of usual human experience and that would be markedly distressing to anyone. The question is whether a psychologist has special expertise enabling her to draw such a conclusion.

Although the dissent seems to agree that the method employed by an expert witness in reaching an opinion must be shown to be scientifically valid, it offers no support for the proposition that mental health professionals can determine that a person has been the victim of the sort of trauma that causes PTSD. As *Bledsoe* noted, RTS "was not devised to determine the 'truth' or 'accuracy' of a particular past event," but rather as a therapeutic tool. 36 Cal.3d at 250, 681 P.2d at 300, 203 Cal.Rptr. at 459. The dissent points to no scientific authority suggesting that PTSD differs from RTS in this regard. Has there been any scientific validation that a psychologist can accurately deduce from (1) symptoms

**2.** Mention should be made of two assertions that appear in a thoughtful and widely cited law review article on the subject—Massaro, *supra.* First, the article contends, *id.* at 449, that RTS can be used as a diagnostic tool to conclude that a patient has suffered a rape. The authority relied upon, however, is simply a suggestion by two co-authors that clinicians who observe certain symptoms in patients may consider the possibility that the symptoms are caused by an undisclosed rape. The authors do not assert that the diagnosis can distinguish between two versions of events, nor do they cite any studies that suggest that possibility. *See* A. Burgess & L. Holmstrom, *Rape Trauma Syndrome,* in *The*

*Rape Victim* 128 (D.Nass ed. 1977); A. Burgess & L. Holmstrom, *Rape: Crisis and Recovery* 449–52 (1979). Second, Massaro, *supra,* asserts that RTS symptoms may distinguish it from PTSD resulting from other causes. 69 Minn. L.Rev. at 447. He cites as examples that a victim may develop a fear of men or, if raped in her apartment, may fear being indoors. He does not, however, provide any scientific authority that such fears can be used to determine that a rape indeed occurred. In any event, even if his assertion is generally true, it has no applicability here. Dr. Lenssen did not suggest that any of the complainant's symptoms was specific to rape.

such as those complainant suffered—withdrawal from normal activities, inability to sleep, increased anger, loss of weight, and excessive nervousness—and (2) results from the Rorschach test and MMPI that an individual has suffered the sort of trauma that can induce PTSD? No such validation has been offered to us. Does not Dr. Lenssen's expertise in "diagnosing" the complainant as suffering from PTSD therefore boil down to simply expertise in determining that the complainant was telling the truth in her account of the alleged rape? Yet courts remain overwhelmingly skeptical of purported expertise in evaluating the veracity of a witness and, again, there is nothing before us to show the validity of Dr. Lenssen's methods of establishing the veracity of the complainant's allegations.

In support of the admission of Dr. Lenssen's testimony, the dissent points to examples of purportedly admissible expert opinion testimony by a doctor regarding physical injuries. The examples do not undermine our analysis. If the doctor's method of determining the means by which a physical injury has occurred (for example, a blow to the skull with a blunt instrument) has been validated, the doctor's testimony should be admitted. If the method has not been validated, the testimony should not be admitted. To exclude testimony based on unvalidated methods is not, as the dissent claims, to "denigrate the expertise of the medical health care provider." It is to protect the integrity of the fact-finding process from unfounded theories.

Nor does *State v. Newman*, 109 N.M. 263, 784 P.2d 1006 (Ct.App.1989), lend support to the dissent. The objection raised here was not properly preserved in that case. *State v. Barraza*, 110 N.M. 45, 791 P.2d 799 (Ct.App.1990), also did not address the issue presented here.

Finally, we disagree with the dissent's suggestion that the admission of Dr. Lenssen's testimony should be reviewed under an abuse-of-discretion standard. Many types of trial court evidentiary decisions, including some decisions relating to expert testimony, are properly reviewed under that standard. We need not canvass all such types of decisions. Not all evidentiary matters, however, are reviewed under that standard. For example, we do not defer to a trial court's decision to admit hearsay that comes within none of the exceptions to the hearsay rule. Likewise, it appears to be universal practice for appellate courts to decide whether a type of scientific evidence is sufficiently reliable to be admitted at trial. We should not abandon the rule of law in the name of trial-court discretion.

### III. Conclusion

The state has not argued that admission of the diagnosis testimony of Dr. Lenssen was harmless error. Therefore, we reverse defendant's conviction and remand for a new trial.

**IT IS SO ORDERED.**

CHAVEZ, J., concurs.

BIVINS, J., (dissents).

BIVINS, Judge (dissenting).

I am unable to agree with the majority that SCRA 1986, 11–702 requires exclusion of the expert psychological testimony offered by the state through Dr. Lenssen. The majority has in effect adopted for New Mexico a rule that would exclude, from the jury's consideration, expert opinion testimony by a mental health care provider that symptoms manifested by an individual, claiming to be the victim of rape, were consistent with a disorder, known as post-traumatic stress disorder (PTSD). While recognizing that a mental health care provider may offer expert testimony regarding PTSD for some purposes, the majority opinion would exclude such testimony for the purposes offered in the case before us.

The majority opinion recognizes that testimony stating that an alleged rape victim was suffering from a psychological ailment is admissible to establish personal injury to the victim, such as mental anguish. *See* NMSA 1978, § 30–9–11(B)(2) (Cum.Supp. 1990); *State v. Barraza*, 110 N.M. 45, 47–48, 791 P.2d 799, 801–02 (Ct.App.1990). The majority opinion also recognizes the

use of such testimony to rehabilitate the credibility of the alleged rape victim when that credibility has been called into question because the behavior could be seen as inconsistent with having been sexually assaulted. If testimony by a qualified mental health care provider may be offered for those two purposes, why should the expert not be allowed to express an opinion that the alleged victim suffered from PTSD, and that one of the recognized causes of PTSD is rape. To answer that question, it is necessary to first identify the analytical framework.

There are two questions which must be answered before a trial judge can make a decision as to whether to admit or reject testimony of the kind offered in this trial. The threshold question requires a determination as to whether PTSD has received "general acceptance" in the particular field to which it belongs. *See Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923). The second step is to determine if the testimony regarding PTSD satisfies the requirements of Rule 11–702. That rule requires that: (1) the specialized knowledge and expertise "assist the trier of fact"; and (2) the witness be "qualified as an expert by knowledge, skill, experience, training or education."

A. *General Acceptance Requirement*

I fully agree with the majority that the central concern addressed by the *Frye* test is satisfied by requiring that the method employed by the expert be scientifically valid. I endorse the idea that courts should carefully scrutinize scientific testimony to determine if the area of expertise has received general acceptance in the scientific community to which it belongs. Whether that test has been met here depends upon how one views Dr. Lenssen's testimony.

From Dr. Lenssen's testimony, as well as literature on the subject, I believe one can determine, with respect to PTSD, what is and what is not generally accepted by the community of psychiatrists and psychologists. From those sources, I believe it may be said that there is general acceptance for PTSD as a diagnosis for a psychological condition that may result when an individual experiences an event that is outside the range of the usual human experience and that would be markedly distressing to anyone. *See generally* H. Kaplan, A. Freedman, & B. Sadock, *Comprehensive Textbook of Psychiatry/III* at 1517–18 (3d ed. 1980). Second, it is generally accepted that rape is one of the experiences that can cause PTSD. When rape is the cause of PTSD it is referred to as rape trauma syndrome (RTS).

What is not generally accepted with respect to PTSD is how to make a determination as to the cause of PTSD, or, as more appropriate to the case before us, how to distinguish rape as the cause as opposed to some other cause. The quotation in the majority opinion from *People v. Bledsoe*, 36 Cal.3d 236, 681 P.2d 291, 203 Cal.Rptr. 450 (1984) makes clear that the disorder was not devised to determine the truth or accuracy of a particular past event, *i.e.*, whether in fact a rape in the legal sense occurred, but rather was developed as a therapeutic tool to help identify, predict and treat an emotional problem. *Cf. Kruse v. State*, 483 So.2d 1383, 1387 (Fla.Dist.Ct. App.1986) (en banc) (admitted expert testimony on post-traumatic stress syndrome (PTSS) explaining that the testimony was more in the nature of a medical opinion that trauma caused the victim's emotional problems rather than a legal conclusion that a crime had occurred). Having identified generally what is and what is not generally accepted with regard to PTSD, the narrower question before us is where does Dr. Lenssen's testimony fall?

Dr. Lenssen described the symptoms that victims of rape may experience, such as flashbacks, memory loss, diminished interest in activities, suicidal tendency, inability to sleep and irritability. She saw the alleged victim in this case on two occasions and interviewed the victim's mother once. In addition, Dr. Lenssen administered two psychological tests. Dr. Lenssen diagnosed the alleged victim as suffering from PTSD. In testifying, she did not use the term "rape trauma syndrome," apparently

to avoid making a differential diagnosis, thereby falling within the realm of what is generally not accepted in this area of expertise. In addition, Dr. Lenssen did not testify that the alleged victim had, in fact, been sexually assaulted. Dr. Lenssen did express an opinion, however, that the symptoms displayed by the alleged victim, as confirmed by the psychological tests, were consistent with her diagnosis of PTSD. Curiously, defense counsel, on cross-examination, brought out through Dr. Lenssen that there did not appear to be any factors other than the assault which could have contributed to the alleged victim's symptoms. Admittedly, the obvious inference to be drawn from Dr. Lenssen's testimony is that: (1) the alleged victim suffered from PTSD; (2) one of the recognized causes of PTSD is rape; (3) any other possible cause was excluded; therefore, (4) the alleged victim must have been raped. While the majority opinion does not predicate reversal on the answers that were invited by cross-examination; nevertheless, one cannot overlook the impact the responses to cross-examination made upon the syllogism just offered. I mention this because effective cross-examination would, in my opinion, allow the trier of fact to consider the type of testimony offered in the correct light and give it the weight it is due. *See, e.g., State v. Liddell,* 211 Mont. 180, 685 P.2d 918, 923 (Mont.1984) ("[S]killed direct and cross-examination of an expert in this area can assist the jury in determining whether, in fact, the victim consented to the act.").

Cross-examination of the state's expert may in some cases cast doubt and even allow a different inference to be made. If, for example, the alleged rape victim has recently suffered some other event beyond normal human experience, that fact could be presented to the jury. Once it is established that there may be one or more other causes for the PTSD diagnosis, the testimony might be effectively diluted or even excluded.

To be sure, by permitting the mental health care provider to express an opinion that the alleged victim suffered from PTSD and the symptoms manifested by her were consistent with someone who has suffered sexual assault, we come dangerously close to allowing testimony as to causation, which goes beyond general acceptance within the scientific community of this area of expertise. Nevertheless, I am unable to say, as a matter of law, such testimony crosses over that line. The opinions expressed by Dr. Lenssen are not that different from those expressed by experts in ordinary civil actions, which opinions we readily admit.

For example, it is quite common in a personal injury case to ask the treating physician for an opinion, based upon the patient's medical history, whether the injuries diagnosed were, to a reasonable degree of medical probability, caused by the accident or event reported in the history. Normally we allow the physician to express his or her opinion in response to this type question. The defense may, on cross-examination, develop a number of other possible causes equally consistent with the injuries diagnosed and treated; however, we do not exclude the physician's opinion because he or she is unable to differentiate the cause with exactitude. We leave that to the trier of fact in evaluating the credibility of the witnesses and in deciding how much weight to give the testimony.

While I recognize certain differences between a physician expressing an opinion, for example, that a fall down a stairway was consistent with a broken hip, as compared with more subjective symptoms involved in the mental health area, I do not think those differences necessarily require exclusion of the testimony. Had Dr. Lenssen attempted to make a differential diagnosis and link the diagnosis positively to rape, I would agree that would be inadmissible. But where, as here, the expert merely expresses an opinion that the alleged victim's symptoms were consistent with PTSD, I believe the district court should have the discretion to allow that testimony.

By excluding this testimony, I believe that we denigrate the expertise of medical health care provider. For example, a victim claiming to have been raped may pres-

ent herself to a physician with fresh bruises over her body. The defense is consensual sex. Could we say an abuse of discretion occurs if the court allows the physician to give an opinion that the victim's bruises are consistent with rape on the basis that there are no scientifically valid, widely accepted means for determining whether the bruises resulted from rape as opposed to consensual rough sex? Probably not. For the same reason, I can see no principled reason to forbid a psychologist from offering an opinion that mental or emotional "bruises" are consistent with PTSD. *Cf. State v. Barraza,* 110 N.M. at 47–48, 791 P.2d at 801–02 (testimony that victim's symptoms were consistent with those of victims of RTS was not equivalent to testimony that victim suffered from RTS; testimony could be relied upon to establish mental anguish and satisfy personal injury element of rape offense).

### B. *Requirements under Rule 11–702*

In order to be able to present expert testimony under New Mexico law, the testimony must "assist the trier of fact" and be given by a witness "qualified as an expert by knowledge, skill, experience, training or education." SCRA 1986, 11–702. In the instant case, the qualifications of Dr. Lenssen have not been challenged. The remaining question under the Rule 11–702 analysis is whether the testimony assists the trier of fact.

#### 1. *Assistance to the Trier of Fact*

Because rape and its impact on victims is frequently misunderstood, expert testimony may be of considerable assistance to the trier of fact. Moreover, where the victim suffers psychological injury, such as PTSD in this case, the jury may need the assistance of an expert. Understanding the behavior of the alleged victim and interpretation of the symptoms of PTSD is probably not within the ken of the average person. *See, e.g., State v. Strickland,* 96 N.C.App. 642, 387 S.E.2d 62 (1990) (testimony that victim was suffering from PTSD and that her behavior was consistent with the behavior of other victims of sexual assault

held admissible); *State v. Liddell,* 685 P.2d at 923 ("Psychiatric testimony [regarding PTSS and RTS] is admissible to aid a jury in determining whether there was consent to engage in a sexual act which all parties agree occurred. It remains up to the jury to determine whether the evidence is credible.").

Moreover, this court has recently upheld the admission of similar expert testimony to assist the jury to understand the behavior of a sexually abused individual. *See State v. Newman,* 109 N.M. 263, 266, 784 P.2d 1006, 1009 (Ct.App.1989). In *Newman* the district court ruled that a counselor and therapist in sexual abuse matters could state her opinion concerning whether a child's behavior was consistent with that of a sexually abused child. I see no reason why the expert testimony in the present case should be treated any differently. While the district court in *Newman* did not allow the expert to testify as to whether she believed the individual was being truthful about the alleged incident or whether the individual's condition was actually caused by sexual abuse, the expert testimony presently in question does not fall into either limitation. Dr. Lenssen simply testified, as did the expert in *Newman,* that the behavior exhibited by the alleged victim was consistent with sexual abuse. *See State v. Newman,* 109 N.M. at 266, 784 P.2d at 1009.

### C. *Abuse of Discretion*

Further, we should not lose sight of the fact that the reviewing court's role is to determine whether the district court abused its discretion regarding the admission of evidence. *See State v. Vigil,* 103 N.M. 643, 645, 711 P.2d 920, 922 (Ct.App. 1985) (Once a trial court has made a determination to admit expert testimony under Rule 11–702 "such a decision is accorded great weight by a reviewing court and ... will be upheld absent an abuse of discretion."); *Clifton v. Mangum,* 366 F.2d 250, 253 (10th Cir.1966) ("It is only when the proffered evidence is clearly within the comprehension of a layman that we will disturb [the court's] judgment."). The ma-

jority has adopted a rule that would deprive the district court of exercising that discretion with respect to this type testimony. I disagree. By excluding the evidence in this case as a matter of law, we also deprive defendant in another case, from offering similar testimony which might cast considerable doubt upon the alleged victim's claim of rape. For example, the alleged victim may have engaged in consensual sex, but claimed rape for any number of reasons and once having done so, found himself or herself in a position where they were reluctant to admit the falsehood. It is possible that a mental health care provider, examining such an individual, could be of considerable help to the trier of fact in determining whether the intercourse was forced or consensual.

## D. *Conclusion*

While I agree that expert testimony should be limited to areas that have gained general acceptance, I believe that the testimony admitted in this case through Dr. Lenssen falls within that limitation. I agree with the district court that this testimony can assist the trier of fact. Therefore, I would hold that the district court did not abuse its discretion in allowing into evidence the psychologist's testimony. I respectfully dissent.