791 P.2d 799
**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Sean BARRAZA, Defendant–Appellant.**

No. 11134.

Court of Appeals of New Mexico.

March 6, 1990.

Certiorari Denied April 18, 1990.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HARTZ, Judge.

Defendant received concurrent sentences on convictions of one count of kidnaping and two counts of second degree criminal sexual penetration (CSP II). His challenge to the CSP convictions rests on the alleged impropriety of testimony regarding rape-trauma syndrome (RTS) by Micki Curtis, the Sexual Assault Program Coordinator for Southwest Mental Health Associates. He does not challenge the kidnaping conviction. We granted oral argument, primarily to consider whether any error had been preserved. We affirm.

## INTRODUCTION

RTS is a term appearing in psychiatric literature of the past fifteen years describing emotional reactions that victims of rape commonly experience. *See* A. Burgess & L. Holmstrom, *Rape Trauma Syndrome,* 131:9 Am. J. Psychiatry 981 (Sept.1974). Defendant's brief raises interesting questions regarding testimony about RTS. Given the apparently widespread use of such testimony in CSP prosecutions, guidance from this court on the implicated evidentiary questions would be helpful to prosecutors, defense counsel, and trial judges.

Unfortunately, this case does not present a suitable vehicle for us to accomplish more than providing a few limited observations. Proper analysis of the subtleties arising in RTS testimony requires that the issue be focused in the trial court. When a specific objection is raised to such testimony, counsel for both parties can produce an appropriate record and the trial judge can exercise an informed discretion. We can then review whether that discretion was abused. *See, e.g., State v. Bowman,* 104 N.M. 19, 715 P.2d 467 (Ct.App.1986) (exclusion of RTS testimony was within sound discretion of trial court in balancing probative value of evidence against its capacity for improper prejudice). In this case, however, the most troubling contentions raised in defendant's brief either have no factual basis or were not preserved for appeal because they were not raised in the trial court. *See* SCRA 1986, 11–103(A).

Therefore, we need not address them to dispose of this appeal. Nor do we think it wise to utter dicta on subtle evidentiary matters without a record that presents the issues with greater clarity than does the record here. Nevertheless, this case may serve the purpose of alerting the bar and trial courts to issues worthy of careful consideration and to the need for a proper record if those issues are to receive appellate review.

We understand defendant's contentions on appeal to be: (1) the trial court erred in allowing testimony that the victim suffered from RTS; (2) RTS testimony cannot be used to establish the personal injury necessary to prove CSP II; (3) defendant should have received notice that the state intended to use RTS testimony, because he would then have moved for an independent psychiatric evaluation of the victim; (4) Ms. Curtis did not possess the medical qualifications to testify about the victim's physical manifestations of RTS, such as nausea, increased consumption of alcohol, and recurrence of asthma; (5) Ms. Curtis was not qualified to give expert testimony on RTS; (6) RTS testimony is inadmissible to prove the victim's lack of consent; and (7) use of the term "RTS" improperly encouraged the jury to believe that experts can determine whether a rape in fact occurred.

■ The first contention has no basis in fact. No one testified that the victim suffered from RTS. Ms. Curtis, the state's expert witness on RTS, carefully avoided making such an assertion. She referred to the "alleged rape" and testified only that the victim's alleged symptoms were consistent with those of victims of RTS. Therefore, the first contention need not be addressed. Of the remaining six contentions, only (2), (3), and (4) were properly preserved below, at least in part. The last three contentions were not raised at trial; consequently, they cannot assist defendant in the absence of plain or fundamental error.

We discuss contentions (2) and (3) together; treat (4) briefly; establish that (5), (6), and (7) were not preserved below; and then touch on plain error and fundamental error.

CONTENTIONS (2) & (3): USE OF TESTIMONY REGARDING EMOTIONAL DAMAGE TO PROVE PERSONAL INJURY

To sustain a conviction of CSP II, the state must prove that the CSP was perpetrated "by the use of force or coercion which results in personal injury to the victim[.]" NMSA 1978, § 30–9–11(B)(2) (Cum. Supp.1989). Defendant's trial counsel raised two objections concerning testimony regarding the victim's emotional condition as proof of "personal injury." First, he suggested that psychological trauma cannot be used to establish such injury. Second, he contended that if it can be used, he was entitled to notice of the state's intent to proceed on that theory, so that he could have obtained a psychological examination of the victim. Although neither objection focused on RTS per se, we will address RTS testimony in this context, thus responding to defendant's appellate contentions (2) and (3).

■ Defendant's first concern is answered by the language of the CSP statute and by precedent from this court. The statute defines "personal injury" as "bodily injury to a lesser degree than great bodily harm and includes * * * mental anguish[.]" NMSA 1978, § 30–9–10(C) (Repl.Pamp. 1984). We have held that the "mental anguish" necessary to establish CSP II is "distress of the mind." *State v. Jiminez*, 89 N.M. 652, 657, 556 P.2d 60, 65 (Ct.App. 1976).

Related to this first concern is whether the evidence at trial of mental anguish was properly admitted and sufficient to establish that element of the offense. *See State v. Linam*, 90 N.M. 729, 568 P.2d 255 (Ct. App.1977) (sufficiency of the evidence may be raised for first time on appeal). To prove mental anguish, the prosecution relied on evidence of the victim's mental condition on the night of the offense and on Ms. Curtis' testimony concerning the victim's later emotional state and behavior. She described, for example, the victim's mood swings from depression to anger, the victim's emotional inability to re-enroll in school, indications that the victim had start-

ed drinking more to block out what happened, and the victim's plan to move in order to avoid bad memories and embarrassment. Such evidence is undoubtedly relevant to establishing an element of the offense (mental anguish), and the relevance outweighed any improper prejudicial impact.

In addition, Ms. Curtis described typical emotional reactions to rape that are considered part of RTS. In her testimony to the jury she did not, however, diagnose the victim as suffering from RTS. Rather, she stated that the symptoms described by the victim were consistent with the syndrome. That testimony is somewhat troublesome. On the one hand, it appears relevant. Scientific studies showing that victims of rape typically suffer certain symptoms may make it more likely that a particular rape victim suffered in a similar fashion. On the other hand, it might be improper for the jury to infer from such studies that one suffering those symptoms is actually a victim of rape. *See State v. Newman*, 109 N.M. 263, 784 P.2d 1006 (Ct.App.1989) (Hartz, J., specially concurring). Nevertheless, we need not weigh the relevance of that portion of Ms. Curtis' testimony against the potential for improper prejudicial impact, because no specific objection was made at trial to that particular testimony. Defense counsel's general objection to *all* testimony regarding emotional injury did not alert the trial court to the need to hear argument and perhaps take further evidence to evaluate the specific testimony's relevance and potential prejudice. We will not rule that the trial judge abused his discretion in admitting that specific portion of Ms. Curtis' testimony, when he was not requested to exercise that discretion. *See* R. 11–103(A)(1).

Having concluded that Ms. Curtis' testimony was relevant, we next address its sufficiency. Defendant suggests that the emotional distress proved in this case is insufficient to establish "mental anguish," because similar distress would be suffered by almost every victim of CSP and therefore the offense of CSP III—which is identical to CSP II as defined in Section 30–9–

11(B)(2), except for the absence of the requirement of personal injury—would be a nullity. Although there may be some truth to defendant's factual premise, the legal conclusion is unsound. A statutory requirement is not rendered a nullity simply because ordinarily the requirement will be established by the evidence. Moreover, as we implicitly recognized in *Jiminez*, the evidence at trial may not convince the jury that the victim suffered personal injury. Defendant apparently would have us define mental anguish as something like "psychological or emotional damage that requires psychiatric or psychological treatment or care, either on an in-patient or out-patient basis, and is characterized by extreme behavioral change or severe physical symptoms[.]" But the quoted language is the definition in Section 30–9–10(B) of "great mental anguish," which would elevate CSP II to CSP I. *See* § 30–9–11(A)(2). The less-than-extreme behavioral change about which Ms. Curtis testified suffices to support a jury verdict of CSP II.

As for defendant's claim that the state should have advised him of its intention to prove personal injury by establishing emotional distress, defendant waived any complaint about lack of such notice by failing to request a statement of facts prior to trial pursuant to SCRA 1986, 5–205(C). *See State v. Martin*, 94 N.M. 251, 609 P.2d 333 (Ct.App.1980). There was nothing novel about the state's theory of personal injury.

Insofar as defendant may be complaining that he was not specifically advised that Ms. Curtis would testify about RTS, he does not identify any legal requirement for such disclosure. In particular, he does not claim any violation of the state's duties under the discovery provisions of the Rules of Criminal Procedure. Moreover, once defendant was specifically advised of the state's theory and its intent to put on evidence regarding RTS, he failed to request a continuance in order to prepare further to meet that theory and the state's evidence. Failure to request a continuance undermines defendant's claim of unfair surprise. *Cf. State v. Altgilbers*, 109 N.M.

453, 786 P.2d 680 (Ct.App.1989) (No. 10,-071) (failure to seek continuance may waive complaint that exculpatory evidence was not disclosed until trial).

## MS. CURTIS' MEDICAL EXPERTISE

■ Although defendant contends on appeal that Ms. Curtis was not medically qualified to testify about the victim's asthma, nausea, and increased consumption of alcohol, his sole objection at trial was that she lacked the medical expertise to testify that the victim suffered from asthma, which was exacerbated by the rape. Yet Ms. Curtis never gave a medical diagnosis regarding the victim's asthma; she merely testified that the victim reported to her that she was suffering from increased asthma. The objection had no merit.

## OTHER APPELLATE OBJECTIONS

None of defendant's other appellate objections was raised below. Other than those already discussed, trial counsel posed four objections to Ms. Curtis' testimony. All four were made either immediately after her voir dire examination out of the presence of the jury or during her subsequent testimony: (1) He objected "just for the record" to all of her testimony, without noting any specific objection. (2) He objected to one question as "asked and answered." (3) He objected that certain testimony by Ms. Curtis concerned a matter that was "not what the evidence was proffered for." (4) He objected to a hypothetical question because the hypothetical suggested to the jury that the rape actually had occurred.

■ The only one of these objections that could possibly encompass any of defendant's appellate issues is his objection "just for the record" to all of Ms. Curtis' testimony. But an objection that does not state the grounds for the objection preserves no issue for appeal. *See* R. 11–103(A)(1). While the rule provides that an objection need not be specific if the specific ground is apparent from the context, nothing in the context of this objection suggested that defendant was urging any of the grounds raised on appeal.

## PLAIN ERROR AND FUNDAMENTAL ERROR

■ Even if defendant did not raise proper objections at trial, he may be entitled to relief if the errors of which he complains on appeal constituted plain error, Rule 11–103(D), or fundamental error, SCRA 1986, 12–216(B)(2). In either case, we must be convinced that admission of the testimony constituted an injustice that creates grave doubts concerning the validity of the verdict. *See State v. Marquez*, 87 N.M. 57, 529 P.2d 283 (Ct.App.1974) (plain error)[1]; *State v. Jaramillo*, 85 N.M. 19, 508 P.2d 1316 (Ct.App.) (fundamental error), *cert. denied*, 414 U.S. 1000, 94 S.Ct. 353, 38 L.Ed.2d 236 (1973). We are not so convinced.

To determine if there has been plain or fundamental error, we must examine the alleged errors in the context of the testimony as a whole. Although Ms. Curtis' testimony concerning RTS per se posed risks which might have required the trial court to sustain specific objections, we do not find that the risks were sufficiently great to make admission of that testimony plain or fundamental error. The essence of Ms. Curtis' testimony was to establish mental anguish and to disabuse the jury of any misconceptions it might have had regarding how rape victims react to the offense. Such testimony is appropriate, and on those matters Ms. Curtis' extensive experience with rape victims provided her with adequate expertise. *Cf. State v. Newman* (analogous testimony admissible to explain behavior of child victim of sexual abuse). We note that Ms. Curtis did not testify that the victim had in fact been raped. Indeed, early in her testimony she referred to the "alleged rape." Thus, the chief risk of RTS testimony—that the jury will improp-

---

1. Although *Marquez* might be considered a one-judge opinion of no precedential value, *see Casias v. Zia Co.*, 94 N.M. 723, 616 P.2d 436 (Ct.App. 1980), the dissenting and specially concurring opinions do not appear to dispute the lead opinion's definition of "plain error." In any event, we agree with that definition.

erly conclude that someone with the symptoms of RTS in fact is a rape victim—is not substantial here. There is little likelihood that the jury viewed Ms. Curtis' testimony as a "diagnosis" that the victim had been raped. *See id.* (Hartz, J., specially concurring). (We need not consider whether a properly qualified expert can testify that because an alleged victim suffers from RTS, she was in fact probably raped.) This record does not suggest that the danger of unfair prejudice so outweighed the probative value of Ms. Curtis' testimony as to require reversal in the absence of an objection.

CONCLUSION

In future cases when there is a question as to whether an issue was properly preserved, appellate counsel should recite in the brief what trial counsel said to preserve the issue raised on appeal and should argue specifically how the issue was preserved or why it need not have been preserved.

We affirm defendant's convictions.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.