This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35792**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**LIONEL FRANCIS,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren J. Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** Defendant appeals his convictions for second-degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994); negligent child abuse, contrary to NMSA 1978, Section 30-6-1(D)(1) (2009) (No Death or Great Bodily Harm); and battery on a household member, contrary to NMSA 1978, Section 30-3-15 (2008). On appeal, Defendant contends: (1) his conviction for child abuse and second-degree murder were not supported by sufficient evidence; (2) his convictions for second-degree murder and

battery on a household member constitute double jeopardy; and (3) he received ineffective assistance of counsel. Because we agree with Defendant's double jeopardy argument, we reverse his conviction for battery on a household member. We affirm Defendant's remaining convictions.

**BACKGROUND**

**{2}**     Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we set forth here only a brief overview of the historical facts of this case. We reserve discussion of specific facts where necessary to our analysis.

**{3}**     On the evening of November 10, 2013, Defendant and his girlfriend (Victim), were involved in a severe physical altercation that resulted in Victim's death. The morning after the altercation, Defendant called 911 and reported that Victim was not breathing. Farmington Police arrived at the scene, forced entry into the ground floor of Defendant's two-story apartment due to the lack of response after five minutes of pounding on the door, and found Victim laying on the living room floor covered by a sheet. Officers also discovered evidence of smeared blood, blood splatter, hair clumps, bloody rags, and alcohol bottles in the apartment. After the police forced entry, Defendant appeared at the top of the stairs with his five-month old child (Infant) in his arms and his 7-year old step-child at his side. The two children were removed from the scene and released to the New Mexico Children, Youth and Families Department (CYFD). Police arrested Defendant and described him as disheveled, smelling of alcohol, covered in what appeared to be dried blood with a swollen right hand and rug burns on his knees.

**{4}**     Defendant was charged with the following crimes: second-degree murder, evidence tampering, negligent child abuse, and battery on a household member. At trial, the State introduced evidence of Defendant's interrogation, where Defendant confessed to details of a physical fight with Victim. Defendant's statements regarding the details of what transpired during the altercation varied over the course of the interrogation, but Defendant consistently stated that Victim accused him of infidelity and slapped him while Defendant was holding Infant, and although Defendant pushed her away and told her to stop, Victim persisted. Defendant admitted to pushing, punching, and kicking Victim several times. The State presented photographic evidence of the scene and Victim's injuries as well as testimonial evidence from officers, crime scene and medical investigators, a neighbor who heard the fighting, and a forensic pathologist who testified about the autopsy detailing Victim's injuries and cause of death. The jury convicted Defendant of second-degree murder, negligent child abuse, and battery on a household member, from which Defendant now appeals.

**DISCUSSION**

**A.     Sufficient Evidence Supports Defendant's Conviction for Negligent Child Abuse**

**{5}** Defendant argues there was insufficient evidence to convict him of child abuse. We disagree. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Torrez*, 2013-NMSC-034, ¶ 40, 305 P.3d 944 (internal quotation marks and citation omitted). "Substantial evidence is that which a reasonable mind accepts as adequate to support a conclusion." *State v. Huerta-Castro*, 2017-NMCA-026, ¶ 24, 390 P.3d 185. "This Court evaluates the sufficiency of the evidence in a criminal case by viewing the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences in favor of upholding the conviction, and disregarding all evidence and inferences to the contrary." *State v. Trujillo*, 2012-NMCA-092, ¶ 5, 287 P.3d 344. "[T]he jury is free to reject [the d]efendant's version of the facts," *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829, and we do not "consider the merit of evidence that may have supported a [different result]." *State v. Kersey*, 1995-NMSC-054. ¶ 11, 120 N.M. 517, 903 P.2d 828.

**{6}** In this case, in order to convict Defendant of negligent child abuse by endangerment, the jury was required to find beyond a reasonable doubt that Defendant: (1) hit and kicked Victim (Infant's mother) with Infant in close proximity; (2) by engaging in such conduct, Defendant caused Infant to be placed in a situation which endangered the life or health of Infant; and (3) Defendant showed a reckless disregard without justification for the safety or health of Infant. *See* § 30-6-1(D)(1) (stating that "[a]buse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health"); *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (stating that "[t]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured" (internal quotation marks and citation omitted)). The jury instructions specified that "reckless disregard" requires that Defendant's "conduct was more than merely negligent or careless[,]" and that Defendant "caused a substantial and unjustifiable risk of serious harm" to Infant, which means a law-abiding person would have behaved differently "out of concern for [Infant's] safety or health[.]"

**{7}** Defendant contends that the State failed to establish the "close proximity" element beyond a reasonable doubt, as required in the instructions, because the only evidence presented was Defendant's statement that Infant "was in his bouncy chair right beside us." Defendant also argues that his confession was contradictory and therefore unreliable, and that the "single statement about [Infant]'s location" was insufficient "to prove beyond a reasonable doubt that [Infant] was close enough to the violence to be endangered." We are unpersuaded.

**{8}** Defendant's characterization ignores the several times Defendant admitted that he was holding Infant or that Infant was nearby during the fight, as well as the severity of the beating he inflicted on Victim in their small apartment, which placed Infant directly into the extremely violent altercation, during which Infant could have easily been harmed by Defendant or Victim, who had a right to defend herself. *See State v. Granillo*, 2016-NMCA-094, ¶ 12, 384 P.3d 1121 (holding that "[a]buse by endangerment is a

special class of child abuse designed to punish conduct that exposes a child to a significant *risk* of harm," regardless of physical injury to child (internal quotation marks and citation omitted)); *see also State v. Arrendondo*, 2012-NMSC-013, ¶ 25, 278 P.3d 517 (noting that recklessness causing a foreseeable risk may be proven with evidence that "the defendant was or should have been aware that the child was present within the zone of danger").

**{9}** As to Defendant's assertion that the confession was unreliable, we resolve all reasonable inferences in favor of the verdict and disregard all evidence and inferences that support a different result. *Trujillo*, 2012-NMCA-092, ¶ 5. Moreover, we note that here, Defendant placed Infant in the middle of a dangerous altercation that resulted in the death of Infant's mother. While "mere proximity to a dangerous situation [is] insufficient to support to a conviction for child abuse by endangerment[,]" the State presented sufficient evidence that Infant was at risk of harm during the altercation. *Trujillo*, 2002-NMCA-100, ¶ 18. Defendant created a substantial and unjustifiable risk of serious harm to Infant because a law-abiding person would have behaved differently to keep Infant out of danger, especially considering the increasingly severe nature of the fight.

**{10}** Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that the evidence sufficed to support Defendant's child abuse conviction. *See State v. Chavez*, 2009-NMSC-035, ¶ 26, 146 N.M. 434, 211 P.3d 891 (recognizing that a conviction for child abuse by endangerment requires that the defendant place a child within the zone of danger and in physical proximity to an inherently dangerous situation).

**B.     The District Court Did Not Plainly Err by Admitting Evidence of Bruising on Infant's Back**

**{11}** Defendant alternatively argues it was plain error for the district court to admit (1) Detective Jason Solomon's testimony that he observed two bruises on Infant's back, and (2) photographs of those bruises, claiming such evidence was irrelevant and tainted the jury's assessment of the child abuse charge. Defendant specifically argues that the evidence should not have been admitted and the State's reliance on it in closing invited the jury to convict based thereon. Because these evidentiary arguments were not preserved, we review for plain error. *State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071. This Court has held that "plain error is to be used sparingly." *State v. Torres*, 2005-NMCA-070, ¶ 9, 137 N.M. 607, 113 P.3d 877. We apply the rule only in evidentiary matters and "only if we have grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *Id*. (internal quotation marks and citation omitted). In determining whether there has been plain error, "we must examine the alleged errors in the context of the testimony as a whole." *State v. Barraza*, 1990-NMCA-026, ¶ 18, 110 N.M. 45, 791 P.2d 799.

**{12}** Defendant argues that because, under Rule 11-401 NMRA and Rule 11-403 NMRA, the State failed to prove that Defendant caused the bruises—or even when the

bruises occurred—the jury was misled to rely on an impermissible speculation that Defendant caused the bruising based on the evidence presented. We disagree for two reasons. First, as stated earlier, there was sufficient evidence to uphold the negligent child abuse conviction. Second, *negligent* child abuse on an endangerment theory, as opposed to a physical abuse, requires no physical injury to convict. *Chavez*, 2009-NMSC-035, ¶ 15. As such, with respect to evidence supporting Defendant's conviction for negligent child abuse, we conclude that the substantial evidence presented regarding Defendant's admissions, the severity of the altercation, and Defendant's intoxication, without any consideration of evidence concerning Infant's bruises, together support the jury's verdict. Even assuming, *arguendo*, that the district court erred in admitting the evidence of bruises due to the risk of misleading the jury, we do not find that any such risk was sufficient to constitute plain error requiring reversal. Defendant has not persuaded us that, in looking at the trial as a whole, we should have "grave doubts about the validity of the verdict" such that his substantial rights were affected or that the fairness and integrity of the trial was impacted. *State v. Dylan J.*, 2009-NMCA-027, ¶¶ 15, 19, 145 N.M. 719, 204 P.3d 44. Therefore, we conclude that the admission of evidence of Infant's bruises does not rise to plain error, and affirm Defendant's conviction for negligent child abuse.

## C.     Sufficient Evidence Supports Defendant's Conviction for Second-Degree Murder

**{13}**     Defendant also challenges the sufficiency of the evidence to convict him of second-degree murder. In order to convict Defendant of second-degree murder, the State was required to prove beyond a reasonable doubt that Defendant: (1) "killed [Victim]"; (2) "knew that his acts created a strong probability of death or great bodily harm to [Victim]"; and (3) "did not act as a result of sufficient provocation." *See* UJI 14-210 NMRA; § 30-2-1(B). The State was also required to prove that Defendant's actions were a significant cause of Victim's death. *See State v. Huber*, 2006-NMCA-087, ¶ 13, 140 N.M. 147, 140 P.3d 1096. On this issue, the jury was instructed that it had to find beyond a reasonable doubt that: "[t]he death was a foreseeable result of [D]efendant's act" and Defendant's act "was a significant cause of the death of [Victim]." The instruction further explained that "[D]efendant's act was a significant cause of death if it was an act which, in a natural and continuous chain of events, uninterrupted by an outside event, resulted in the death and without which the death would not have occurred."

**{14}**     Defendant argues there was insufficient evidence of causation because the lethal level of alcohol in Victim's blood could have caused her death. However, the State's medical expert on pathology, Dr. Heather Jarrell, testified that the cause of Victim's death was multiple injuries caused by blunt force trauma. While Dr. Jarrell also testified to Victim's high blood alcohol level, noting that it may have contributed to her death, she emphasized that in her expert opinion the cause of her death was blunt force trauma, not alcohol consumption. *See State v. Munoz*, 1998-NMSC-041, ¶ 23, 126 N.M. 371, 970 P.2d 143 (stating that for causation "there must be a significant link between the victim's death and the defendant's act"). Notably, Defendant does not dispute that he

beat Victim prior to her death. Accordingly, even if alcohol consumption could have contributed to Victim's death, the jury was not precluded from finding that Defendant's acts were the cause of death. *See State v. Montoya*, 2003-NMSC-004, ¶ 19, 133 N.M. 84, 61 P.3d 793 ("In cases where death results from multiple causes, an individual may be a legal cause of death even though other significant causes significantly contributed to the cause of death."). Moreover, the fact that there may have been evidence supporting a different inference does not provide a basis for reversal on appeal. *See State v. Salazar*, 1997-NMSC-044, ¶ 44, 46, 123 N.M. 778, 945 P.2d 996 (stating that contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject a defendant's version of the facts). We therefore reject Defendant's arguments that there was insufficient evidence to affirm his second-degree murder conviction.

**D.      Defendant's Convictions for Second-Degree Murder and Battery on a Household Member Constitute Double Jeopardy**

**{15}**    Defendant next argues that his convictions for second-degree murder and battery against a household member violate his right to be free from double jeopardy because they were based on unitary conduct and the Legislature did not intend multiple punishments for the conduct. We agree and vacate the battery on a household member conviction.

**{16}**    Double jeopardy is a question of law that we review de novo. *State v. Gutierrez*, 2012-NMCA-095, ¶ 8, 286 P.3d 608. This case presents a "double-description" double jeopardy challenge. *See State v. Lucero*, 2015-NMCA-040, ¶ 21, 346 P.3d 1175 (noting that where a defendant challenges two convictions under different statutes for what he contends is the same conduct, it raises a double description challenge). In analyzing a double-description claim, "[w]e first consider whether the conduct underlying the offenses is in fact the same, or unitary. If the conduct is not unitary, there is no double jeopardy violation." *Id.* (citations omitted). If the conduct is unitary, we then interpret the statute "to determine whether the Legislature intended to create separately punishable offenses." *Id.* (alteration, internal quotation marks, and citation omitted).

**{17}**    As to the first part of the analysis, whether Defendant's conduct was unitary or instead separate because of "sufficient indicia of distinctness," we consider whether the acts were "close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act." *Lucero*, 2015-NMCA-040, ¶ 22. Defendant again contends his statements during his interrogation were contradictory, and thus unreliable, and that the State relied heavily on one version of events in closing to support that there was a break in fighting between Defendant and Victim, and therefore, two separate incidents. The State points to Defendant's statements that Victim continued drinking, that he placed Infant in his bouncy chair at some point in the altercation, and that Victim was first standing and then on the ground to support the contention that there was a "lull between the initial battery . . . and the ultimate attack in which Defendant used lethal force." *See Lucero*, 2015-NMCA-040, ¶ 23 (concluding that an attack while standing versus after

the victim had fallen to the floor to be insufficient to support that the defendant's conduct was unitary). The State also argues that physical evidence was presented that Defendant used two different kinds of force to inflict Victim's nonfatal head injuries as compared with the fatal beating which caused her lung injuries, and further contends that Defendant's intent changed from deterrence to infliction of great bodily harm.

**{18}** It is undisputed that "Defendant's story is not always linear or easy to follow and there are various inconsistences." Moreover, while substantial evidence was presented that Victim was beaten to death, the evidence admitted at trial did not conclusively establish the sequence of events. *See id.* ¶ 24 (determining that the defendant's conduct was unitary where "the admitted evidence did not establish the sequence or timing of [the v]ictim's injuries"). Defendant's statements regarding his and Victim's continued drinking or that he placed Infant in a bouncy chair were insufficient to establish an intervening event, and, instead, we hold Defendant's conduct was markedly close in time and similar throughout the altercation. While the State argues that the physical evidence and evidence of Defendant's intent support two distinct incidents, our review of the record supports "one prolonged fight" as opposed to two distinct events. As a result, based on the evidence presented at trial, the jury could not have reasonably distinguished between the factual bases for the second-degree murder charge and the battery on a household member charge, and thus, we conclude Defendant's conduct was unitary.

**{19}** In the second prong of the inquiry, we analyze whether the Legislature intended to create separate punishments for second-degree murder and battery on a household member. *See id.* ¶ 21. First, we consider the language of the statute. *State v. Torres*, 2018-NMSC-013, ¶ 21, 413 P.3d 467. "If the statutory language does not explicitly allow for multiple punishments, we apply canons of construction to determine legislative intent." *Id.*; *see also Swafford v. State*, 1991-NMSC-043, ¶¶ 12-13, 112 N.M. 3, 810 P.2d 1223 (discussing various canons of construction to determine legislative intent in a double jeopardy analysis, looking to the language, structure, and legislative history of the statutes and the social evils sought to be addressed by the statutes). "If the legislative intent remains ambiguous, [we apply] the rule of lenity [and] presume that the Legislature did not intend multiple punishments for the same conduct." *Torres*, 2018-NMSC-013, ¶ 21 (internal quotation marks and citation omitted).

**{20}** The statute criminalizing battery on a household member requires the "unlawful, intentional touching or application of force to the person of a household member," while the second-degree murder statue consists of a person "kill[ing] another human being . . . if in performing the acts which cause the death [Defendant] knows that such acts create a strong probability of death or great bodily harm." Sections 30-2-1(B), 30-3-15(A). The language of the statutes does not explicitly address the issue of multiple punishments and "when the conduct is unitary, we must apply canons of construction to . . . ascertain the Legislature's intent." *Torres*, 2018-NMSC-013, ¶ 23. Our jurisprudence on the statutory construction applies the modified *Blockburger* test. *See Torres*, ¶ 25 ("In New Mexico . . . our law does not permit an application of *Blockburger* that is so mechanical that it is enough for two statutes to have different elements." (internal

quotation marks and citation omitted)); *Lucero*, 2015-NMCA-040, ¶ 27 ("[O]ur Supreme Court has clarified that the application of *Blockburger* should not be so mechanical that it is enough for two statutes to have different elements[, i]nstead, a . . . double jeopardy analysis may require looking beyond facial statutory language to actual legal theory in the particular case by considering . . . the evidence, the charging documents, and the jury instructions." (internal quotation marks and citations omitted)).

**{21}** In *Lucero*, "[the d]efendant sliced [the v]ictim's throat and arm, and stomped on his head." *Lucero*, 2015-NMCA-040, ¶ 32. This conduct formed the basis for both the aggravated battery and voluntary manslaughter charges. There, we rejected the state's contention that the statutes were "separately punishable because they proscribe different crimes with different elements." *Id.* ¶ 30. Instead, we held that "both statutes punish overt acts against a person's safety but take different degrees into consideration." *Id.* ¶ 31 (alteration, internal quotation marks, and citation omitted); *see State v. Swick*, 2012-NMSC-018, ¶ 29, 279 P.3d 747 (concluding similarly in double jeopardy analysis involving aggravated battery and attempted murder).

**{22}** In the present case, we also reject the State's contention that when each statute requires proof that the other does not, the crimes are universally separately punishable. Moreover, we likewise conclude that though the battery on a household member statute and second-degree murder statute involve different elements, as in *Lucero,* "both statutes punish overt acts against a person's safety but take different degrees into consideration." 2015-NMCA-040, ¶ 31 (alteration, internal quotation marks, and citation omitted).

**{23}** We disagree with the State that Defendant's actions were distinct and separately punishable. First, the evidence proffered does not support two separate attacks; and second, the conduct supporting the charges was difficult to distinguish as applicable to only one of the charges. At trial, the State's theory to support the battery on a household member charge was that Defendant struck Victim with his elbow and kicked her. Its theory to support the second-degree murder charge was that Defendant kicked, punched, and beat Victim to death. The battery on a household member is subsumed within second-degree murder. *See id.* ¶ 32 (stating that the "aggravated battery is subsumed within the voluntary manslaughter" where the conduct supporting each of the charges was nearly indistinguishable); *see also Swick*, 2012-NMSC-018, ¶ 27 (stating that "the aggravated battery elements were subsumed within the attempted murder elements"). Applying the modified *Blockburger* test and the rule of lenity, we conclude that the imposition of multiple punishments here constituted double jeopardy. *See Swick,* 2012-NMSC-018, ¶ 30 (stating that "when doubt regarding legislative intent remains, ambiguity must be resolved in favor of lenity." (internal quotation marks and citation omitted)).

**{24}** We vacate the conviction with the shorter sentence when double jeopardy protections demand one of two convictions to be vacated. *See Torres*, 2018-NMSC-013, ¶ 28 (avoiding double jeopardy violation by vacating the conviction carrying the shorter sentence). Because his conviction of second-degree murder carries a sentence

of fifteen years of imprisonment while for his conviction for battery on a household member conviction carries a sentence of eighteen months of imprisonment, we reverse and remand with instructions to vacate Defendant's battery against a household member conviction.

### E. Ineffective Assistance of Counsel

**{25}** Finally, we address Defendant's argument that he received ineffective assistance of counsel. "We review claims of ineffective assistance of counsel de novo." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057. "To establish a claim of ineffective assistance of counsel, a defendant must show that his or her attorney failed to exercise the skill of a reasonably competent attorney and that the defendant was prejudiced by the failure." *State v. Reyes*, 2002-NMSC-024, ¶ 46, 132 N.M. 576, 52 P.3d 948, *abrogated on other grounds by Allen v. LeMaster*, 2012-NMSC-001, ¶ 36, 267 P.3d 806.

**{26}** Defendant argues that he was denied effective assistance of counsel because his attorney: (1) failed to communicate effectively with him and did not visit or spend a significant period of time advising him, (2) advised him against testifying, (3) failed to object to prejudicial testimony from a neighbor, (4) failed to file a motion to suppress his statements to police, (5) did not investigate other possible causes of death, and (6) did not move for a change of venue. The facts to support these assertions are not part of the record, and Defendant's counsel notes that the issue can be raised in a collateral proceeding. We therefore believe that these arguments are more appropriately presented in a habeas corpus proceeding. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 ("If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition[.]"); *see also State v. Herrera*, 2001-NMCA-073, ¶ 37, 131 N.M. 22, 33 P.3d 22 ("When the record on appeal does not establish a prima facie case of ineffective assistance of counsel, this Court has expressed its preference for resolution of the issue in habeas corpus proceedings over remand for an evidentiary hearing.").

### CONCLUSION

**{27}** For the reasons set forth above, we affirm in part and reverse in part. We remand to the district court with instructions to vacate the conviction for battery on a household member and to resentence accordingly. In all other respects, we affirm.

**{28} IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**