This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38178**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**THEO JONES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren Joseph Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Theo Jones appeals his convictions for five counts of criminal sexual penetration in the first degree (child under 13), pursuant to NMSA 1978, Section 30-9-11(D)(1) (2009), and one count of criminal sexual penetration in the second degree, pursuant to Section 30-9-11(E)(1). Defendant raises a number of issues: (1) the district court committed plain error when it allowed evidence of a second victim; (2) the district court committed plain error when it allowed evidence of bolstering from the investigating detective; (3) the carbon-copy counts against him violated his right to due process; (4)

the evidence was insufficient to support all five counts of criminal sexual penetration in the first degree (child under 13); (5) the carbon-copy counts against him violate his right to be free from double jeopardy; (6) the district attorney engaged in prosecutorial misconduct by improperly vouching during his closing argument; and (7) he received ineffective assistance of counsel. We affirm.

**BACKGROUND**

**{2}** E.B. lived with her aunt and other family members. Defendant, who was dating her Aunt, moved in with them in the fall of 2010. In December 2010, Defendant had sexual intercourse with E.B. who was then twelve years old. The two continued to have sexual intercourse regularly over the next few months, including after her thirteenth birthday in April 2011. Following a jury trial, Defendant was convicted of six counts of criminal sexual penetration.

**{3}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve discussion of specific facts where necessary to our analysis.

**DISCUSSION**

**I.     Defendant's Claims of Evidentiary Error**

**{4}** We start by addressing Defendant's claims regarding evidentiary errors. Defendant identifies two errors that he failed to object to during trial: evidence referencing a second victim and the investigating detective's testimony that seemed to bolster E.B.'s credibility.

**{5}** Although Defendant did not object to the evidence, Defendant "may be entitled to relief if the errors of which he complains on appeal constituted plain error." *State v. Lucero*, 1993-NMSC-064, ¶ 12, 116 N.M. 450, 863 P.2d 1071 (internal quotation marks and citations omitted). "To find plain error, the Court must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted). Plain error applies to "cases raising evidentiary matters in which the asserted error affected substantial rights." *State v. Garcia*, 2019-NMCA-056, ¶ 10, 450 P.3d 418. In determining whether there has been plain error, we "examine the alleged errors in the context of the testimony as a whole." *State v. Barraza*, 1990-NMCA-026, ¶ 18, 110 N.M. 45, 791 P.2d 799. The plain error rule is to be used sparingly as an exception to the preservation rule designed to encourage efficiency and fairness. *See State v. Paiz*, 1999-NMCA-104, ¶ 28, 127 N.M. 776, 987 P.2d 1163. With this framework in mind, we examine Defendant's claims of evidentiary error.

**A.     Evidence of Another Victim Did Not Amount to Plain Error**

**{6}**     The detective who investigated E.B.'s claims interviewed Defendant as part of his investigation. A portion of the video of the detective's interview of Defendant was played at trial. At the beginning of the interview, the detective stated,

> I understand it's hard, embarrassing, those types of things. You know [E.B.'s sister] she even talked about one time when you were rubbing on her butt. . . .  She goes I just stayed away from him and he stayed away from me. . . . So I'm not even concerned about that, okay? But I am concerned like I told you about the things that were going on with you and [E.B.].

During a bench conference after the detective was excused, the district court questioned the State about playing the portion of the video to the jury that included the reference to another victim. The State explained that it was an oversight because the prosecutor had forgotten about the reference in the interview. After consideration, the district court decided not to provide the jury with a curative instruction because it believed doing so would draw attention to the comment. Defense counsel did not request any remedy during or after the bench conference. The district court did not address the comment again during the proceedings.

**{7}**     Defendant argues that the testimony regarding a second victim is improper propensity character evidence contrary to Rule 11-404(B)(1) NMRA. To establish the error amounted to plain error, Defendant contends that that evidence was highly prejudicial, irrelevant, and only served to "paint [Defendant] as a sexual predator," particularly in light of the detective's following comment in the interview where he mentioned that he was attempting to investigate whether Defendant was a predator. We assume without deciding that the comment was an error, and determine that it did not amount to plain error. We explain.

**{8}**     In examining the testimony as a whole, we first address the error. The detective was not questioned at trial about his reference to another victim in the interview, and no further reference to another victim was made by any other witness. Further, neither party mentioned the comment in closing.

**{9}**     We next examine context of the error and note that the jurors heard not only the detective's testimony, but also E.B.'s, in which she described sexual intercourse with Defendant multiple times over a period of months. The jury also observed Defendant's interview in which he admitted having sexual intercourse with E.B. six times and that he would use a condom while having sexual intercourse with her. Our review of the testimony as a whole leads us to conclude that admission of the detective's passing reference to a possible other victim does not cause "grave doubts about the validity of the verdict." *State v. Dylan J.*, 2009-NMCA-027, ¶¶ 15, 19, 145 N.M. 719, 204 P.3d 44. Accordingly, we conclude that the admission of the detective's comment did not constitute plain error.

**B.    The Detective's Comments Relating to Defendant's Credibility Do Not Amount to Plain Error**

{10}    At the end of the State's direct examination of the detective, the State questioned him about Defendant's credibility in the following manner:

State:          Based on that answer and all the other answers and based on your training and experience, did you believe him when he was talking to you?

Detective:    There were some parts where I did believe him. In fourteen years of investigating sex crimes, I know that people minimize things that have taken place, numbers that have taken place, how many times, [and] things that have taken place. So I was concerned that there was probably some minimization going on. But for the overall I believe he was honest with me.

State:          Could you give the jury maybe some specific instances where you believe the defendant in this particular interview was minimizing?

Detective:    The number of times. And like I said that's very normal for both victims and suspects of sex crimes, especially with children because they don't fully understand they will minimize, and for suspects just because of the embarrassment.

During cross-examination, defense counsel asked about Defendant's arrest. On redirect, the State and the detective had this exchange:

State:          You just testified on cross-examination that you believe he was arrested at the end of his interview, is that right?

Detective:    Yes.

State:          So why did you arrest him because earlier that day he said nothing happened at his house and then here in the interview he said it happened six times. So why did you believe that instead of what he said the first time at his house that nothing happened?

Detective:    At that point we already had the safe house with the victim. The victim had already told us everything that had been taking place. Again we safe house the children in cases like that. We had all that recorded. I also had the pretext phone

call and what he had told her to say, basically telling her to lie and that he didn't regret having sex with her, so I was confident that something had taken place.

**{11}**    Defendant argues that the detective improperly testified about the credibility of both Defendant and E.B. with these comments when he stated he believed Defendant minimized the number of times a sexual encounter took place, when he referenced the safe house interview, and when he stated he was confident something had taken place. We assume without deciding that the detective's comments were improper comments regarding the witnesses' credibility and as such were wrongly admitted. We conclude, however, the error does not constitute plain error.

**{12}**    To the extent that Defendant relies on *Lucero*, 1993-NMSC-064, ¶¶ 20-22, we distinguish *Lucero* on two grounds. First, *Lucero* concerns expert testimony that that "amounted to a repetition of the complainant's statements regarding sexual abuse made to her during her evaluation." *Id.* ¶ 21. The improper comments were the majority of the expert's testimony and the Court noted it was "obvious to us that the [s]tate's real purpose for introducing [the expert]'s testimony was to bolster the complainant's credibility." *Id.* Here, the detective's comments constituted only a small percentage of his testimony, and no evidence was presented to suggest he was called to testify for an improper reason. Second, the *Lucero* Court determined that credibility was a pivotal issue, the expert witness repeated the complainant's statements, and because she commented directly and indirectly upon the complainant's truthfulness, the error created grave doubts about the validity of the verdict. *Id.* In contrast to *Lucero*, the jury in this case viewed the video in which Defendant admitted to having sexual intercourse with E.B. The other cases cited by Defendant were reviewing the error under the harmless error standard of review and are not relevant to our determination. Our review of the detective's comments does not cause "grave doubts about the validity of the verdict," *Dylan J.*, 2009-NMCA-027, ¶¶ 15, 19, and we conclude its admission did not constitute plain error.

## II.    Defendant Waived Any Objection to His Indictment Based on Due Process

**{13}**    Defendant was charged by criminal information with five counts of criminal sexual penetration in the first degree (child under thirteen). The first count stated, "[O]n or about December 1, 2010, [Defendant] did cause [E.B.], a child under thirteen years of age to engage in sexual intercourse/anal intercourse/cunnilingus/fellatio, a first degree felony, contrary to Section 30-9-11(D)(1)." The final four counts were identical except for expanding the time frame to "on or between December 15, 2010 to April 12, 2011." Defendant raised no objection to the criminal information.

**{14}**    On appeal, Defendant argues that "the district court violated [Defendant's] right to due process" by convicting him based on carbon-copy counts in the charging document. Defendant acknowledges that he failed to object below, and on appeal fails to develop an argument regarding fundamental error. Defendant waived this argument. *See State v. Lente*, 2019-NMSC-020, ¶ 16, 453 P.3d 416 (noting the defendant waived the

opportunity to object to the indictment on notice or due process grounds when he failed to file pretrial objections to the indictment or demand specification of the charges); *see also State v. Huerta-Castro*, 2017-NMCA-026, ¶ 15, 390 P.3d 185 (indicating that a defendant must move for a bill of particulars in order to preserve a due process issue based on an indictment); *see, e.g.*, *State v. Dombos*, 2008-NMCA-035, ¶ 21, 143 N.M. 668, 180 P.3d 675 (declining to consider a due process claim based upon multiple carbon copy counts of criminal sexual penetration within the indictment because the defendant did not preserve the argument).

### III.    Sufficient Evidence Supports Defendant's Convictions

**{15}**    Defendant argues there was insufficient evidence to support convictions for five counts of criminal sexual penetration for a child under thirteen because E.B. specifically testified about just one incident of sexual intercourse between Defendant and E.B. Defendant contends that the remainder of her testimony was insufficiently specific to support the remaining counts. We disagree.

**{16}**    We first note that in Defendant's interview with the detective, Defendant admitted having sexual intercourse with E.B. six times, and stated he would use a condom while having sexual intercourse with her. The jury was also presented with evidence regarding a pretext phone call between E.B. and Defendant where he told her to lie about the two of them having sex.

**{17}**    Moreover, we apply the *Lente* analysis regarding a child victim's testimony for sufficiency of the evidence in resident child molester cases. *See* 2019-NMSC-020, ¶¶ 1, 67-70. *Lente*, acknowledging difficulties faced by children who must testify about multiple acts of molestation that occur over a substantial period of time, *id.* ¶¶ 61-62, requires that the victim in a resident child molester case provide testimony satisfying the following three requirements for multiple convictions to survive sufficiency review: (1) "the child victim must describe the proscribed act or acts committed with sufficient specificity to establish that unlawful conduct did in fact occur[;]" (2) "the child must describe the number of proscribed acts committed with sufficient certainty to support each of the counts alleged in the information or indictment[;]" and (3) "the child must describe the general time period in which the proscribed acts occurred." *Id.* ¶¶ 67-70.

**{18}**    E.B.'s testimony must be analyzed through *Lente's* resident child molester sufficiency analysis because she was a child victim who lived with her abuser and the abuse continued over several months. *See id.* ¶ 1. E.B.'s testimony specifically established that she had sexual intercourse with Defendant in December 2010 at her grandmother's house. She also testified that she engaged in sexual intercourse with Defendant once after she turned thirteen in April 2011. Thus, E.B.'s testimony established an articulable time period between December 2010 and April 2011. *See id.* ¶ 70. She stated that they had sexual intercourse, an act described with specificity, once every two weeks. *See id.* ¶¶ 68-69; *see also id.* ¶ 57 ("The more frequent and repetitive the abuse, the more likely it becomes that the victim will be unable to recall specific dates and places. Even a mature victim might understandably be hard pressed

to separate particular incidents of repetitive molestations by time, place or circumstance." (alteration, internal quotation marks, and citations omitted)). E.B.'s testimony, describing an act of sexual intercourse once every two weeks between December 2010 and April 2011, is sufficient to uphold Defendant's conviction for five counts of criminal sexual penetration (child under thirteen).

**{19}**     Because the evidence was sufficient to sustain each conviction for criminal sexual penetration (child under 13), no double jeopardy violation occurred in this case. *See id.* ¶ 84; *State v. Martinez*, 2007-NMCA-160, ¶¶ 11-13, 17, 143 N.M. 96, 173 P.3d 18 (concluding that no double jeopardy violation occurred when the defendant was charged with five identical but separate counts of criminal sexual penetration of a minor over a period of time and the jury was presented with identical jury instructions when there was sufficient evidence to distinguish the different counts based on the victim's testimony of separate incidents).

## IV.    The Prosecution Did Not Commit Fundamental Error by Improperly Vouching

**{20}**     During his rebuttal argument, the prosecutor made the following statement to the jury in response to defense counsel's attempt during closing argument to cast doubt on whether any of the alleged acts took place by asking why there was no photographic or DNA evidence of the alleged crimes,

> [i]t happened because everybody is in agreement. You know who's in disagreement with defense counsel as to whether or not this took place? [D]efendant. I know it took place, [E.B.] knows it took place, [the detective] knows it took place. And [Defendant] knows it took place. It seems the defense counsel is the only one in this room that doesn't know it took place.

Defendant did not object, but the judge immediately called a bench conference, admonished the prosecutor, and then instructed the jury that the prosecutor's opinion was not relevant and it was the province of the jury to determine the facts based on the law.

**{21}**     Defendant argues the comment amounted to improper prosecutorial vouching and the curative instruction was not sufficient to cure the error. Because Defendant did not object, we review for fundamental error. *See State v. Carrillo*, 2017-NMSC-023, ¶ 50, 399 P.3d 367. "We review comments made in closing argument in the context in which they occurred so that we may gain a full understanding of the comments and their potential effect on the jury." *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254 (internal quotation marks and citation omitted). Both the prosecution and defense are permitted wide latitude during closing, and "the [district] court has wide discretion in dealing with and controlling closing argument." *Id.* (internal quotation marks and citation omitted). "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's

verdict that the defendant was deprived of a fair trial." *Carrillo*, 2017-NMSC-023, ¶ 50. The State concedes the comments were improper but argues that the comments did not result in fundamental error. We agree.

**{22}** "Prosecutors are permitted to comment on the veracity of witnesses so long as the statements are based on the evidence—not personal opinion—and are not intended to incite the passion of the jury." *State v. Dominguez*, 2014-NMCA-064, ¶ 23, 327 P.3d 1092. "However, a prosecutor cannot vouch for the credibility of a witness, either by invoking the authority and prestige of the prosecutor's office or by suggesting the prosecutor's special knowledge." *Id.* (internal quotation marks and citation omitted).

**{23}** We agree that the prosecutor's comment amounts to improper vouching because, combined with his statement that the detective knew it happened, the prosecutor implied that he and the detective had special knowledge about the case and implicitly invoked the authority of the office. *See id.*; *cf. State v. Pennington*, 1993-NMCA-037, ¶¶ 26-27, 115 N.M. 372, 851 P.2d 494 (concluding that improper vouching occurred where the prosecutor referred to her ethical obligations as a prosecutor, then asserted that a witness was not lying). However, we do not believe the error amounted to fundamental error.

**{24}** We first note that after the prosecutor made the statement, the district court immediately interrupted the prosecutor's argument and gave an instruction to the jury to disregard the comments. *See State v. Caudillo*, 2003-NMCA-042, ¶ 14, 133 N.M. 468, 64 P.3d 495 (stating that "when a court promptly sustains an objection and admonishes the jury to disregard the evidence, it usually cures any prejudicial impact of inadmissible evidence"). Further, evidence presented included E.B.'s testimony, in which she described sexual intercourse with Defendant multiple times over a period of months, Defendant admitting to having sex with E.B. six times, Defendant admitting to using a condom while having sex with E.B., and Defendant telling E.B. to lie about their relationship. Based on these considerations, we do not have doubts about Defendant's guilt that would "shock the conscience" and we do not conclude that "fundamental unfairness within the system has undermined judicial integrity" such that substantial justice has not been served. *See State v. Silva*, 2008-NMSC-051, ¶ 13, 144 N.M. 815, 192 P.3d 1192, *modified on other grounds by State v. Guerra*, 2012-NMSC-027, 284 P.3d 1076. We therefore conclude the prosecutor's comment did not constitute fundamental error.

## V.     Defendant Did Not Make a Prima Facie Case of Ineffective Assistance of Counsel

**{25}** Defendant's final argument is that his defense counsel at trial committed several errors that deprived him of effective assistance of counsel, namely: (1) failure to object to the admission of the portion of the videotaped confession that referenced a second allegation of misconduct; (2) failure to move for a bill of particulars or otherwise object to the carbon-copy counts in the indictment; (3) failure to object to the credibility testimony of the detective; (4) failure to object to the prosecutorial vouching testimony in closing

argument; (5) inviting evidence of a pretext phone call made to Defendant where he told E.B. to lie; and (6) in defense counsel's cross-examination of E.B. Our review of this issue is de novo. *See Montoya*, 2015-NMSC-010, ¶ 57 ("Claims of ineffective assistance of counsel are reviewed de novo.").

**{26}** We address claims of ineffective assistance of counsel under a two-part test derived from *Strickland v. Washington*, 466 U.S. 668, 692 (1984). *See State v. Uribe-Vidal*, 2018-NMCA-008, ¶ 25, 409 P.3d 992; *Lytle v. Jordan*, 2001-NMSC-016, ¶ 25, 130 N.M. 198, 22 P.3d 666. "In order to be entitled to relief on the basis of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Trammell*, 2016-NMSC-030, ¶ 16, 387 P.3d 220 (internal quotation marks and citation omitted).

**{27}** We presume a defendant received effective assistance of counsel "unless a defendant demonstrates both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice." *State v. Sloan*, 2019-NMSC-019, ¶ 33, 453 P.3d 401 (internal quotation marks and citation omitted). Further, "[f]ailure to prove either prong of the test defeats a claim of ineffective assistance of counsel." *State v. Reyes*, 2002-NMSC-024, ¶ 48, 132 N.M. 576, 52 P.3d 948.

**{28}** In addressing the first prong, the defendant "must demonstrate that . . . counsel's performance was deficient in that it fell below an objective standard of reasonableness." *State v. Allen*, 2014-NMCA-047, ¶ 17, 323 P.3d 925 (internal quotation marks and citation omitted). "We do not find ineffective assistance of counsel if there is a plausible, rational trial strategy or tactic to explain counsel's conduct." *State v. Bernard*, 2015-NMCA-089, ¶ 35, 355 P.3d 831 (internal quotation marks and citation omitted). "In order to overcome the presumption that counsel acted reasonably, [the d]efendant must show that the challenged action could not be considered sound trial strategy." *State v. Miera*, 2018-NMCA-020, ¶ 31, 413 P.3d 491 (internal quotation marks and citation omitted).

**{29}** In order to prove that defense counsel's incompetence caused prejudice, "there must have been a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Lukens v. Franco*, 2019-NMSC-002, ¶ 17, 433 P.3d 288 (internal quotation marks and citation omitted). To meet this burden, "counsel's deficient performance must represent so serious a failure of the adversarial process that it undermines judicial confidence in the accuracy and reliability of the outcome." *Dylan J.*, 2009-NMCA-027, ¶ 38 (alteration, internal quotation marks, and citation omitted). "[M]ere evidentiary prejudice is not enough." *State v. Roybal*, 2002-NMSC-027, ¶ 25, 132 N.M. 657, 54 P.3d 61. The prejudice must be such "that there is a reasonable probability that, absent the errors, the fact[-]finder would have had a reasonable doubt respecting guilt." *Id.* (internal quotation marks and citation omitted). A reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted).

**{30}** We regard defense counsel's presentation of and objections to evidence and witnesses as falling within the ambit of trial tactics and strategy. *See State v. Crain*,

1997-NMCA-101, ¶ 25, 124 N.M. 84, 946 P.2d 1095. "[A]ppellate court[s] will not second-guess trial tactics and strategy of trial counsel on appeal." *State v. Baca*, 1993-NMCA-051, ¶ 28, 115 N.M. 536, 854 P.2d 363. Whether to object to certain testimony and the manner of examination are generally matters of trial strategy. Hence, we will not examine defense counsel's decisions regarding objecting to evidence or argument, and examination of witnesses—as alleged in claims (1), (3)-(6). To the extent that these claims have merit, we believe that they would be more appropriately pursued in a habeas corpus proceeding. *See State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.3d ("A record on appeal that provides a basis for remanding to the [district] court for an evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such claims are heard on petition for writ of habeas corpus."); *State v. Turner*, 2017-NMCA-047, ¶ 39, 396 P.3d 184 ("Because many of [the defense counsel's] alleged failures are based on facts that are not of record, [the d]efendant's ineffective assistance of counsel claim is likely more appropriately pursued, if at all, in habeas corpus proceedings.").

**{31}** Turning to Defendant's remaining claim of error in his ineffective assistance of counsel claim, we conclude that Defendant fails to demonstrate the requisite prejudice in order to establish a prima facie case of ineffective assistance of counsel. Defendant fails to identify how failing to object to the carbon copy-counts in the indictment prejudiced him beyond stating that the objection would have helped him prepare a better defense and protect his due process and double jeopardy rights. Without more, Defendant's claim must fail. *See Martinez*, 2007-NMCA-160, ¶ 22 (holding that the defendant's claim that his counsel should have filed a bill of particulars to elicit details about the charges against him failed to establish the prejudice prong of an ineffective assistance of counsel claim because he did not explain how the motion would have affected his case, what the particulars the defense counsel could have elicited, how it would have aided in his defense, or how it prejudiced him).

**CONCLUSION**

**{32}** We affirm Defendant's convictions for criminal sexual penetration.

**{33} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**SHAMMARA H. HENDERSON, Judge**